# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-10606
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

RUSSELL DANE REEVES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

June 20, 2001

Before SMITH, DUHÉ, and WIENER,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

   Russell Reeves appeals his sentence, arguing that the government breached the plea agreement and that the district court improperly enhanced the sentence under U.S.S.G. § 3B1.3. Finding no reversible error, we affirm.

I.

   Reeves and his codefendants defrauded elderly persons by persuading them to turn over money to be invested in what were really sham companies. Reeves pleaded guilty of mail fraud targeting the elderly, a violation of 18 U.S.C. §§ 2, 1341, and 2326, and securities fraud in violation of 15 U.S.C. §§ 77q(a) and 77x.

   Reeves and the government signed a Factual Resume and a "Stipulation of Applicable Guidelines," which included, *inter alia*, a two level enhancement under § 3B1.3

because the offense involved the abuse of a position of trust, an enhancement that Reeves reserved the right to challenge. The agreement stated that "the government recommends that the defendant be sentenced to a term of imprisonment of 72 months."

The presentence report ("PSR") recommended all of the offense level enhancements and reductions included in the stipulation and further recommended that Reeves's offense level be increased by two levels pursuant to U.S.S.G. § 2F1.1(b)(3) because the offense was committed through mass marketing. Including the mass marketing enhancement, the PSR calculated a sentencing guidelines range of 87-108 months' imprisonment.

At sentencing, the government objected to the PSR's application of an enhancement for mass marketing.[1] Reeves objected to the enhancements for mass marketing and abuse of trust. The court overruled the objections and sentenced Reeves to 108 months' imprisonment and three years' supervised release for the securities fraud conviction and 60 months' imprisonment and three years' supervised release for the mail fraud conviction, to run concurrently.

## II.

Reeves contends the government failed to abide by its promise to recommend a 72-month sentence. Whether the government has breached a plea agreement is a question of law we review *de novo*. *United States v. Saling*, 205 F.3d 764, 766 (5th Cir. 2000). Because Reeves failed to object at sentencing, however, we review only for plain error.[2] *United States v. Branam,* 231 F.3d 931, 933 (5th Cir. 2000).

Although "[t]he Government's breach of a plea agreement can constitute plain error," *id.* (quoting *United States v. Wilder*, 15 F.3d 1292, 1301 (5th Cir. 1994)), "we will not exercise our discretion to correct a forfeited error unless it seriously affects the fairness, integrity, or public reputation of judicial proceedings," *id.* (citing *United States v. Olano*, 507 U.S. 725, 735-36 (1993)). In determining whether a plea agreement has been breached, we inquire whether the government's conduct "is consistent with the defendant's reasonable understanding of the agreement." *Saling*, 205 F.3d at 766 (quoting *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993)).

## A.

Reeves avers that the government breached the agreement by failing orally to recommend a 72-month sentence at the hearing. That contention has no merit.

The only statement that could be construed even remotely as a promise on the part of the government is the plea agreement's stipulation

---

[1] Without the mass marketing enhancement, the sentencing range would have included the recommended 72-month term.

[2] Reeves argues that he did in fact object at sentencing. That argument has no merit, however. To avoid forfeiture, "[a] party must raise a claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for our review." *United States v. Krout*, 66 F.3d 1420, 1434 (5th Cir. 1995) (citing *United States v. Bullard*, 13 F.3d 154, 156 (5th Cir. 1994)). Reeves's counsel did not object, but only informed the court that the government had recommended a sentence of 72 months. That statement alone is insufficient to preserve the alleged error.

that "the government recommends that the defendant be sentenced to a term of imprisonment of 72 months." On its face, however, the statement promises nothing. Instead, it anticipates that the plea agreement would be incorporated into the PSR, which it was, and thus that the recommendation would be self-executing, which it also was.

To the extent the recommendation serves as a promise to recommend, the promise was satisfied by the plea agreement's inclusion in the PSR.[3] Under any standardSSand certainly on plain error reviewSSwe cannot say that the government breached the plea agreement in this respect.

### B.

Reeves alleges the government breached the agreement by making the following statement during the sentencing hearing:

> Your honor, the only thing I would add to his foundation, what he said with respect to Mr. Reeves is true with respect to his involvement with Mr. Davenport. The key thing in my mind and before the Court is the fact that he went out on his own, formed his own company as a mirror image of Mr. Davenport's company, victimized elderly victims directly, not as an employee but as the main man. And then when this Court entered an order in the civil case, he disobeyed that order, continued to victimize people. And with respect to

that, I just want the Court to consider that. I realize it's the Court's call here.

Reeves asserts that the statement functions as a suggestion to sentence at the upper end of the guideline range, violating an implicit promise in the plea agreement not to recommend any sentence greater than 72 months.

The government responds, however, that its statement must be viewed in context. Reeves's counsel had just finished arguing that Reeves was not the leader of the scheme and that the leaders had been given sentences lighter than those contemplated by the court. Given the misleading nature of defense counsel's argument,[4] the government contends that the statement merely fulfilled the government's "duty to insure that the court has complete and accurate information concerning the defendant, thereby enabling the court to impose an appropriate sentence." *United States v. Block*, 660 F.2d 1086, 1091 (5th Cir. Unit B Nov. 1981). Because of this duty, "[e]fforts by the government to provide relevant factual information or to correct misstatements are not tantamount to taking a position on the sentence and will not violate the plea agreement." *Id.*; *accord United States v. Goldfaden*, 959 F.2d 1324, 1328 (5th Cir. 1992).

Reeves's argument has some merit. *Block* does not allow the government *carte blanche* to argue for a higher sentence under the guise of correcting factual inaccuracies. *See Saling*, 205 F.3d at 766-67; *Valencia*, 985 F.2d at 759. Moreover, the government, when correcting the factual misstatements, could have been more explicit in disclaiming any

---

[3] *Cf. United States v. Cates*, 952 F.2d 149, 153 (5th Cir. 1992) (interpreting the phrase "recommend at sentencing" to mean an oral or written recommendation and finding the provision satisfied by inclusion of the relevant recommendation in all the documents that were before the sentencing court).

[4] Reeves indeed was the leader of at least one scheme.

recommendation.[5]

Nonetheless, we cannot say that the government's statement falls so far outside its entitlement under *Block* as to constitute plain error. The statement made by Reeves's counsel created a palpable danger that the court would misperceive the relevant facts. In response, the government accurately restated the relevant facts, then merely asked the court to consider those facts, while remarking that "it is the Court's call here." Considering the absence of any argument by the government regarding the sentence or of any express promise in the plea agreement that the government's statement plainly violated, the sentence is not plain error.[6]

III.

Reeves argues that the court improperly enhanced his sentence under § 3B1.3 for "abus-

[ing] a position of private or public trust . . . in a manner that significantly facilitated the commission . . . of the offense." We review the application of the guideline to the facts for clear error, *United States v. Smith*, 203 F.3d 884, 893 (5th Cir. 2000), and the district court need be convinced of the relevant facts only by a preponderance of the evidence, *United States v. Shugart*, 117 F.3d 838, 848 (5th Cir. 1997). Application of § 3B1.3 is proper if "the defendant's job places the defendant in a superior position to commit a crime and the defendant takes advantage of that superior position to facilitate a crime." *United States v. Dahlstrom*, 180 F.3d 677, 685 (5th Cir. 1999) (citing *United States v. Brown*, 7 F.3d 1155, 1161 (5th Cir. 1993)), *cert. denied*, 529 U.S. 1036 (2000).

The district court adopted the PSR's findings that

> [t]he defendant held a position of trust with the elderly clients with whom he dealt, gaining that trust through false and fraudulent pretenses. Numerous victims indicated that the defendant gained their trust after selling them a revocable living trust account. After gaining the victims' trust and learning of their assets, the defendant defrauded the elderly victims by convincing them to invest large sums of money with the defendant. This "trust" significantly facilitated the commission and concealment of the offense.

There is sufficient evidence to support the factual findings that the defendant held a position of trust and that the position of trust significantly facilitated the offense.

Reeves and his codefendants presented

---

[5] *See Saling*, 205 F.3d at 767 n.10 (noting that even if there was a danger that the court possessed inaccurate or incomplete information, "the prosecutor could have so informed the court and then expressly stated that the government would not take a position on how [the information] should affect [the] sentence due to the written plea agreement.").

[6] *Cf. Saling*, 205 F.3d at 767 (vacating a sentence where the government promised not to oppose concurrent sentencing but then expressly did so); *Valencia*, 985 F.2d at 759-60 (vacating a sentence where the government promised not to oppose a sentence reduction for acceptance of responsibility but then expressly did so); *Goldfaden*, 959 F.2d at 1327 (finding plain error and vacating a sentence where the government agreed not to recommend any sentence but then "submitted four memoranda to the probation department advocating the use of different guideline sections to calculate his sentence").

themselves as, *inter alia*, financial planners, in which role they advised clients to invest in a company owned by a codefendant. They also provided "estate planning services," including the preparation of trust documents, an activity for which the State Bar of Texas obtained an injunction against Reeves's codefendant for the unlawful practice of law. Reeves cannot seriously argue that he did not occupy a position of trust.[7]

Likewise, there is substantial evidence that Reeves's position of trust significantly facilitated the commission of his offenses. Only after gaining his clients' trust by posing as an estate planner did he advise them to invest in his codefendant's company. Had he not occupied the position of trust, the clients presumably would not have followed his investment advice. Moreover, there is substantial evidence that Reeves's position as estate planner gave him unique access to clients' financial information, facilitating his fraudulent schemes.[8]

The judgment of sentence is AFFIRMED.

---

[7] *See* § 3B1.3, cmt. 2 ("For example, the adjustment applies in the case of a defendant who . . . perpetrates a financial fraud by leading an investor to believe the defendant is a legitimate investment broker . . . ."); *accord United States v. Hirsch*, 239 F.3d 221, 227 (2d Cir. 2001) (affirming abuse-of-trust enhancement where defendant acted as an investment advisor); *United States v. Paneras*, 222 F.3d 406, 413 (7th Cir. 2000) (affirming abuse-of-trust enhancement where defendant posed as a licensed securities dealer).

[8] *Cf. Smith*, 203 F.3d at 893 (affirming an abuse-of-trust enhancement where a bank teller used her position to gain access to confidential information about bank procedures, facilitating a bank robbery).