United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 29, 2005**

Charles R. Fulbruge III
Clerk

REVISED APRIL 29, 2005
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 04-40481
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RUFINO SERNA MUNOZ,

Defendant - Appellant.
_____

Appeal from the United States District Court
for the Southern District of Texas, Corpus Christi Division
District Court Cause No. 03-CR-289(1)
_____

Before REAVLEY, JOLLY and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Appellant Rufino Serna Munoz challenges his sentence in this appeal.  After considering his arguments, the court vacates Munoz's sentence and remands this case for resentencing.

**Background of the Case**

Munoz was a party to a Ponzi scheme that defrauded numerous individuals by convincing them to turn over funds under the false pretense that they would be invested in legitimate enterprises.[1] Early investors received "profits" from funds contributed by

_____

[1]A Ponzi scheme involves payment of early investors with funds taken from later investors.  *See United States v. Cook*, 573 F.2d 281, 282 n.3 (5th Cir. 1978).

1

later investors, and the scheme eventually collapsed.  Munoz and his codefendants were indicted for 33 counts of various instances of conspiracy, wire fraud, mail fraud, and money laundering.

Pursuant to a written plea agreement, Munoz pleaded guilty to conspiracy to commit wire fraud and mail fraud in violation of 18 U.S.C. § 371 and to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956 (a)(1)(A)(I) and (h), as charged in counts one and fourteen of the indictment.  In return for Munoz's guilty plea, the Government agreed to recommend that Munoz receive maximum credit for acceptance of responsibility and a sentence at the lowest end of the guideline range; dismiss all remaining counts against him in the indictment; and, if Munoz provided substantial assistance, move for a downward departure. The Government agreed that the applicable sentencing guidelines for the fraud offense should be calculated using a base offense level of 6,[2] increased by 14 levels because the loss in his case was less than $1,000,000, but more than $400,000;[3] increased by 2 levels because the scheme defrauded more than ten, but fewer than 50 victims;[4] increased by two levels because execution of the offense involved sophisticated means;[5] increased by two levels

---

[2]See U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(a) (2003).

[3]See id. § 2B1.1(b)(1)(H).

[4]See id. § 2B1.1(b)(2)(A).

[5]See id. § 2B1.1(b)(8)(C).

2

because Munoz was a leader and organizer of the criminal conduct;[6] and decreased by three levels for acceptance of responsibility.[7]  The Government also agreed that Munoz's base offense level for the money laundering offense should be calculated using a base offense level of 24,[8] increased by 2 levels because Munoz was convicted under 18 U.S.C. § 1956,[9] increased by two levels because Munoz was a leader and organizer of the criminal conduct;[10] and decreased by three levels for acceptance of responsibility.[11]  Taking the higher of the two offense levels, the Government further agreed that the resulting total offense level of 25, combined with a criminal history category of I, yielded a guidelines sentencing range of 57-71 months of imprisonment.

The presentence report (PSR) calculated Munoz's sentence differently.  The PSR grouped the offenses[12] and assigned Munoz a

---

[6]*See id.* § 3B1.1(c).

[7]*See id.* § 3E1.1(a), (b).

[8]*See id.* § 2S1.1(a)(1).

[9]*See id.* § 2S1.1(b)(2)(B).

[10]*See id.* § 3B1.1(c).

[11]*See id.* § 3E1.1(a), (b).

[12]The sentencing guidelines instruct the sentencing court to "group" offenses "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts."  *Id*. § 3D1.2(c).  The guidelines further provide that the offense level for the grouped offenses is "the offense level

3

base offense level of 6 for the fraud offense as the offense with the highest offense level.[13] The PSR recommended that the base offense level be increased by 16 levels because the loss in the case was more than $1,000,000, but less than $2,500,000;[14] increased by four levels because the scheme defrauded more than 50;[15] increased by two levels because execution of the offense involved sophisticated means;[16] increased by two levels because Munoz was a leader and organizer of the criminal conduct;[17] and increased by two levels because the offense was facilitated through abuse of a position of trust;[18] and reduced by three levels for acceptance of responsibility.[19] Munoz's total offense level of 29, combined with his criminal history category I, yielded a sentencing guidelines range of 87-108 months of imprisonment.

Munoz filed a written objection to the PSR in which he

---

. . . for the most serious of the counts comprising the [g]roup, i.e., the highest offense level of the counts in the [g]roup." *Id.* § 3D1.3(a). In Munoz's case, count I—conspiracy to commit wire fraud and mail fraud—carried the highest offense level.

[13]*See id.* § 2B1.1(a).

[14]*See id.* § 2B1.1(b)(1)(I).

[15]*See id.* § 2B1.1(b)(2)(B).

[16]*See id.* § 2B1.1(b)(8)(C).

[17]*See id.* § 3B1.1(c).

[18]*See id.* § 3B1.3.

[19]*See id.* § 3E1.1(a), (b).

challenged the enhancement of his sentence for an abuse of trust and asked the district court to follow the calculation set forth in the plea agreement. The probation officer did not revise his recommendations.

At sentencing, Munoz renewed his objection to the PSR's recommendation of an abuse-of-trust enhancement and asked the district court to follow the sentencing guidelines calculation in the plea agreement. Munoz's attorney explained that the two-point adjustment for an abuse of trust was not included in the plea agreement. The Assistant United States Attorney (AUSA) acknowledged that the enhancement was not part of the agreement, but stated that he was free to take a position on the enhancement. The district court then questioned several victim witnesses about whether they trusted Munoz. During its questioning, the court periodically asked the AUSA to clarify certain facts relevant to the enhancement.

After hearing the testimony, the district court asked the AUSA if he urged the application of the abuse-of-trust enhancement. The AUSA answered in the affirmative. The court admonished Munoz in accordance with the PSR's guideline calculations and asked the AUSA if there was a motion for a downward departure. The AUSA moved for a departure based on substantial assistance, and the district court granted the motion. The court then sentenced Munoz to 90 months of imprisonment for the money laundering conviction and 60 months of

imprisonment for the wire fraud conviction, to run concurrently. The court dismissed the remaining counts against Munoz upon motion by the Government.  Munoz timely filed a notice of appeal.

**Whether the Government Breached the Plea Agreement**

Munoz argues that the Government breached the plea agreement by arguing at the sentencing hearing that his conduct constituted an abuse of trust.  Munoz explains that the Government stipulated in the plea agreement to a guidelines calculation that did not include an enhancement for an abuse of trust.  Munoz complains that despite the agreement, the Government breached its promise to recommend and support the stipulated-to guidelines range by affirmatively advocating for an enhancement that was not included in the plea agreement.  Munoz contends that he is entitled to specific performance of the agreement, and thus, he asks this court to vacate his sentence and remand his case for resentencing before a different judge.

Whether the Government has breached a plea agreement is a question of law that the court reviews de novo.[20]  Because Munoz did not object on this basis at sentencing, the court reviews the argument for plain error.[21]  The Government's failure to fulfill its promise affects the fairness, integrity, and public

---

[20]*United States v. Brown*, 328 F.3d 787, 790 (5th Cir. 2003); *United States v. Reeves*, 255 F.3d 208, 210 (5th Cir. 2001).

[21]*Brown*, 328 F.3d at 790; *Reeves*, 255 F.3d at 210.

reputation of judicial proceedings, and thus, a breach of the plea agreement can constitute plain error without regard to the whether the sentencing judge was influenced by the Government's actions.[22]

If a defendant pleads guilty as part of a plea agreement, the Government must strictly adhere to the terms and conditions of its promises in the agreement.[23]  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."[24]  In determining whether the Government violated a plea agreement, this court considers whether the Government's conduct was "consistent with the defendant's reasonable understanding of the agreement."[25]  If

---

[22]*See United States v. Goldfaden*, 959 F.2d 1324, 1328 (5th Cir. 1992) (concluding that breach of a plea agreement can constitute plain error); *United States v. Saling*, 205 F.3d 764, 766-67 (5th Cir. 2000) ("If a breach has in fact occurred, the sentence must be vacated without regard to whether the judge was influenced by the government's actions."); *see United States v. Olano*, 507 U.S. 725, 734, (1993) (explaining that the appellate court should correct a plain error if it seriously affects the fairness, integrity or public reputation of judicial proceedings); *see also United States v. Reeves*, 255 F.3d 208, 210 (5th Cir. 2001) (recognizing that the Government's breach may constitute plain error).

[23]*United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993).

[24]*Santobello v. New York*, 404 U.S. 257, 262 (1971).

[25]*Brown*, 328 F.3d at 790; *United States v. Wittie*, 25 F.3d 250, 262 (5th Cir. 1994).

the Government breaches a plea agreement, the defendant is entitled to specific performance of the agreement with sentencing by a different judge.[26]

Here, the record indicates that the Government breached the plea agreement. The agreement states that the Government and Munoz "agree that the applicable sentencing guidelines should be calculated as follows." The agreement then sets out a specific guideline calculation, which does not include an enhancement for an abuse of trust. By not including an enhancement for an abuse of trust, the parties agreed that it was not an applicable guideline and that it should not be included in the guideline calculation.

Despite the agreement, the Government, through the AUSA, urged application of the abuse-of-trust enhancement. When district court asked him, "What's your position," the AUSA answered, "I believe that there was a private trust that was violated." The AUSA explained that "I . . . did not mention this aspect in the Plea Agreement, but that didn't mean I was not free to argue my position about it." When the court asked if he urged the application of the enhancement, the AUSA answered, "Yes, your Honor." These responses are inconsistent with the plea

---

[26]*Valencia*, 985 F.2d at 761; *see Santobello*, 404 U.S. at 263 (allowing the state court to decide if specific performance and sentencing by a different judge, or withdrawal of the defendant's guilty plea, was proper remedy where government breached the plea agreement).

8

agreement.  Even though the Government reserved the right to "dispute sentencing factors or facts material to sentencing," the Government implicitly promised not to argue for an enhancement that was not part of the plea agreement.  Urging an enhancement that was not part of the agreement constituted a breach.[27]

Although the Government has a duty to provide the sentencing court with relevant factual information and to correct misstatements,[28] it may not hide behind this duty to advocate a position that contradicts its promises in a plea agreement.[29] Here, the Government suggests that it was duty-bound to urge the abuse-of-trust enhancement because Munoz's attorney incorrectly

---

[27]*United States v. Rivera*, 357 F.3d 290, 295 (3d Cir. 2004) ("Because the Offense Level was specifically stipulated to, whereas the government's right to advocate a role enhancement was not, the government's endorsement of an enhancement that would raise the Offense Level above the stipulated level contravened the plea agreement."); *United States v. Taylor*, 77 F.3d 368, 371 (11th Cir. 1996) (explaining that the Government breached the plea agreement by advocating a position contrary to its agreed-upon recommendation and supporting a position inconsistent with the agreement).

[28]*See United States v. Block*, 660 F.2d 1086, 1091 (5th Cir. Unit B. Nov. 1981) (explaining that the prosecutor must speak up where the sentencing court lacks certain relevant information or where the court is mistaken about the facts, and thus the prosecutor did not breach the plea agreement in which he agreed to take no position in the defendant's sentence).

[29]*Colvin v. Taylor*, 324 F.3d 583, 586 (8th Cir. 2003) ("As an officer of the court, the prosecutor had the duty to convey to the court facts about the case and the defendant as long as the specific terms of the plea agreement were not violated." (relying on this court's reasoning in *United States v. Block*, 660 F.2d 1086, 1091 (5th Cir. Unit B. Nov. 1981))).

9

stated that the AUSA did not agree with the PSR's recommendation for a two-point increase. Munoz's attorney, however, made no misstatement. Instead, the attorney stated, "I have noted in the Plea Agreement, the Government was not recommending the two-point adjustment. The Government, through [the AUSA], was not recommending the two-point adjustment for purposes of the calculation of Mr. Munoz's guidelines." Those statements are correct, and thus Munoz's attorney conveyed accurate facts to the court. Had the AUSA simply provided the court with accurate relevant facts, the Government would not have breached the agreement;[30] but the Government crossed the line to breach by affirmatively advocating the application of the enhancement. Although, in closing, the AUSA asked the court to follow the plea agreement,[31] that request, considered in light of the AUSA's position on the enhancement, amounted to little more than lip service to the plea agreement and did not rectify the breach.

The United States Court of Appeals for the Third Circuit reached the same conclusion in *United States v. Rivera*.[32] In

---

[30]*See Block*, 660 F.2d at 1092-92.

[31]The AUSA stated that he wanted to "clear for the record [his] position on the . . . guideline application due to our Plea Agreement in the case." The AUSA stated further that "the total numbers that I did give to the Probation Department are correct the way they have it calculated, but I'm asking the Court, based on our Plea Agreement, to follow the recommendation [in the plea agreement] that would place Mr. Munoz at a level 25 instead of a 29."

[32]357 F.3d 290 (3d Cir. 2004).

10

that case, defendant Rivera and the Government agreed to a total offense level of 35.[33] The PSR, however, recommended a four-point enhancement based on a leadership role.[34] Although the PSR acknowledged that the adjustment was contrary to the plea agreement, it recommended an offense level of 39.[35] In response the Rivera's objection, the Government maintained that it was not precluded from arguing for the enhancement, and the AUSA stated at sentencing that it stood by the probation officer's conclusions.[36] On appeal, the Government argued that it was free to advocate for the enhancement because it had reserved "its right to take any position with respect to the appropriate sentence." The court of appeals rejected this argument because endorsing the PSR's recommendation for an offense level of 39 after agreeing to an offense level of 35 was inconsistent with the plea agreement.[37] Likewise, this court rejects the Government's position that it was free to urge the abuse-of-trust enhancement because the plea agreement was silent about the enhancement. Advocating an enhancement that was not in the plea agreement and that increased the sentencing range was

---

[33]*Rivera*, 357 F.3d at 292.

[34]*Id.*

[35]*Id.*

[36]*Id.* at 292–93.

[37]*Id.* at 295.

11

inconsistent with the agreement.

The United States Court of Appeals for the Eleventh Circuit reached a similar conclusion in *United States v. Taylor*.[38]  In *Taylor*, the defendant agreed to plead guilty to possession of marijuana in exchange for the Government's promise to recommend a sentence of ten years, with the qualification that the Government would recommend a lesser sentence if Taylor cooperated with the Government.[39]  The PSR, however, considered Taylor's attempt to import cocaine as relevant conduct under the sentencing guidelines and recommended a sentencing range of 188-235 months.[40]  Taylor objected to the inclusion of the cocaine-related activities as relevant conduct.[41]  In its response to the objection, the Government stated that it was prepared at sentencing to prove by a preponderance of the evidence that Taylor conspired to import cocaine.[42]  At sentencing, the Government's attorney recommended a sentence of ten years, but the sentencing judge adopted the PSR's position on relevant conduct, applied a two-point reduction for acceptance of responsibility, and sentenced Taylor to 151 months of

---

[38]77 F.3d 368 (11th Cir. 1996).

[39]*Taylor*, 77 F.3d at 369.

[40]*Id.*

[41]*Id.*

[42]*Id.*

12

imprisonment.[43]  On appeal, the court of appeals determined that the Government breached the plea agreement by advocating the PSR's position on related conduct.[44]  The court explained that the defendant reasonably understood the Government's promise to recommend a ten-year sentence as including a promise not to advocate a position that would require a longer sentence.[45]  The court characterized the Government's request that the court follow the plea agreement as lip service that did not cure the breach.[46]  Like defendant Taylor, Munoz reasonably understood the Government's agreement to a specific guidelines calculation as including a promise not to advocate an enhancement that was not included in the agreement.  Paying lip service to the agreed-to calculation did not cure the breach.

**Conclusion**

The Government breached the plea agreement, and thus, the court need not reach Munoz's other arguments.  Munoz is entitled to be sentenced by a different judge as the Government abides by its agreement.[47]  Consequently, the court VACATES Munoz's sentence and REMANDS to the district court for reassignment to a

---

[43]*Id.*

[44]*Id.* at 370-71.

[45]*Id.* at 370.

[46]*Id.* at 371.

[47]*See Valencia*, 985 F.2d at 761.

13

different judge and resentencing.

SENTENCE VACATED and REMANDED FOR RESENTENCING.