IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 10, 2008

Charles R. Fulbruge III
Clerk

No. 08-40197

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

VICENTE SANCHEZ GUERRERO

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:06-CR-801-6

Before BENAVIDES, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

## I. INTRODUCTION

Appellant Vicente Sanchez Guerrero ("Guerrero") was indicted for his role in a drug distribution conspiracy in the Brownsville Division of the Southern District of Texas between 1987 and September 2006. After a mistrial, Guerrero entered into a plea agreement with the government, and subsequently pled guilty to a violation of 18 U.S.C. § 1962 (1988), the Racketeer Influenced and Corrupt Organizations Act. Despite the written objections of the government

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and Guerrero to the Presentence Investigation Report ("PSR"), the district court applied the sentencing enhancement set forth in USSG § 2D1.1(b)(1), a two-level increase to the base offense level "[i]f a dangerous weapon (including a firearm) was possessed" in connection with a drug crime. This enhancement resulted in a total offense level of 42 and a range of imprisonment of 360 months to life, and the district court sentenced Guerrero to 360 months of imprisonment. Guerrero urges this court to find that the government's tendering of firearm-related information to the United States Probation Office ("Probation") and statements during sentencing constitute a breach of the plea agreement sufficient to overcome his appellate waiver. Because we find no breach of the agreement, we affirm Guerrero's conviction and sentence.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Guerrero and his brother, Eloy Sanchez Guerrero, were the leaders of a drug trafficking conspiracy that operated in the Rio Grande Valley between 1987 and 2006. The enterprise was responsible for the distribution of at least 1,900 kilograms of cocaine and over 70,000 kilograms of marijuana, and generated over $38 million in proceeds. A search warrant executed at Guerrero's home resulted in the seizure of hundreds of rounds of ammunition, two loaded firearms and a rifle from his bedroom, a built-in gun cabinet containing a double-barrel shotgun in the nearby hallway, a short-barrel shotgun inside an attached game room, and fourteen additional firearms in an attached garage. Many of these firearms were purchased by Guerrero or his co-conspirators during the existence of the conspiracy, and other members of the organization possessed or used firearms in connection with the drug conspiracy.

Guerrero was charged in seven counts of a fifteen count indictment. Count Fifteen, to which Guerrero eventually pled guilty, included the allegation that "[m]embers of the enterprise and their associates acquired firearms to further the affairs of the enterprise." On August 15, 2007, Guerrero signed a

plea agreement by which he admitted conspiring to engage in a racketeering enterprise, the conduct alleged in Count Fifteen of the indictment. Pursuant to the plea agreement, the government agreed to dismiss the remaining counts against Guerrero and stated that:

> The United States stipulates to the Court that the evidence to date does not show that the Defendant possessed a firearm during and in relation to the commission of the charged offenses.

The stipulated facts in the plea agreement did not reflect any firearm possession by Guerrero, however, they identify Guerrero's central role in the drug distribution operation. Also in the plea agreement, the government reserved the right to "carry out its responsibilities under guidelines sentencing[,]" including the ability,

> (a)   to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;
> (b)   to set forth or dispute sentencing factors or facts material to sentencing . . .

Finally, the plea agreement contains a provision explaining that it "constitutes the complete plea agreement between the United States, Defendant and his/her counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement."

Guerrero entered his guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure on the same day. During that rearraignment hearing, the government summarized the terms of the plea agreement, including the statement that "the United States stipulates to the Court that the evidence to date does not show that this defendant possessed a firearm during and in relation to the commission of the charged offense, which is this RICO conspiracy." In addition, Count Fifteen of the indictment was recited. That

charge included, among other allegations, that "members of the enterprise and their associates acquired firearms to further the affairs of the enterprise."

With information provided by the government, Probation prepared the PSR. Within this report, Probation applied the sentencing enhancement set forth in USSG § 2D1.1(b)(1), stating that "[d]uring the course of the drug trafficking activity, the defendant was in possession of a firearm where drugs were located and/or distributed." Although recognizing that the plea agreement provides that, "there is no evidence the defendant possessed a firearm during and in relation to the charged offenses[,]" the PSR documents the firearms recovered from Guerrero's home and the additional firearms possessed within the racketeering conspiracy, and concludes that Guerrero should be held responsible for the firearms because the racketeering enterprise "used firearms as a common tool of the trade[.]"

Both the government and Guerrero filed objections to the firearms enhancement portion of the PSR. Probation disagreed with the objections and filed an addendum, elaborating upon its reasoning. The defendant and government filed objections to the addendum, again challenging the 2D1.1(b)(1) enhancement. The government's "supplemental response" to the PSR explained further that "[i]t is the United States' position that a gun enhancement is not appropriate in this case. That is why the United States objected to the 2 point increase for guns."

At sentencing, the district court devoted significant time to the firearms enhancement. During the hearing, the government continued to urge that the sentencing enhancement should not apply, despite its recognition that firearms were discovered in Guerrero's residence and were possessed by co-conspirators. Despite the objection, the court ultimately determined that the enhancement should apply. Accordingly, the district judge overruled the objections of Guerrero and the government, applied the 2D1.1(b)(1) enhancement, and

Guerrero was sentenced to a Guidelines sentence of 360 months of imprisonment. Due to an appellate waiver, the court's ruling and subsequent sentence are not challenged on appeal. Appellant's sole point of error is his newfound claim that the government violated the terms of the plea agreement by providing evidence to Probation and the district court about firearms connected to the racketeering conspiracy.

## III. STANDARD OF REVIEW

Because Guerrero failed to object to the purported breach of the plea agreement in the district court, plain error review applies. United States v. Puckett, 505 F.3d 377, 383-86 (5th Cir. 2007), cert. granted, 171 L. Ed. 2d 932 (Oct. 1, 2008) (No. 07-9712) (applying plain error review to breach of a plea agreement).[1] Neither side challenges this standard of review. To demonstrate plain error, Guerrero must show error that was plain and affected his substantial rights. See, e.g., United States v. Reyna, 358 F.3d 344, 350 (5th Cir. 2004); United States v. Branam, 231 F.3d 931, 933 (5th Cir. 2000) ("Even if we find plain error, we will not exercise our discretion to correct a forfeited error unless it seriously affects the fairness, integrity, or public reputation of judicial proceedings.").

We note that since the parties filed their briefs, the United States Supreme Court has granted the petition for certiorari in Puckett. Because our case turns on the question of whether there was a breach, rather than the effect of a breach, we conclude that the decision in Puckett will not affect the outcome of this case.

---

[1] The petition for certiorari was granted "limited to the following question: 'Whether a forfeited claim that the government breached a plea agreement is subject to the plain-error standard of Rule 52(b) of the Federal Rules of Criminal Procedure.'" Puckett, 171 L. Ed. 2d 932 (Oct. 1, 2008) (No. 07-9712).

The party alleging breach bears the burden of proving the underlying facts by a preponderance of evidence. United States v. Wilder, 15 F.3d 1292, 1295 (5th Cir. 1994). In determining whether the terms of a plea agreement have been violated, a court must determine "whether the government's conduct is consistent with what is reasonably understood by the defendant when entering a plea of guilty." United States v. Huddleston, 929 F.2d 1030, 1032 (5th Cir. 1991).

## IV. DISCUSSION

General principles of contract law are used to interpret the terms of a plea agreement. United States v. Cantu, 185 F.3d 298, 304 (5th Cir. 1999). The sole measure of performance is the agreement's express terms. United States v. Cates, 952 F.2d 149, 153 (5th Cir. 1992). In this matter, Guerrero claims that the government violated the plea agreement's provision that "[t]he United States stipulates to the Court that the evidence to date does not show that the Defendant possessed a firearm during and in relation to the commission of the charged offenses." This language does not constitute a promise of any kind. It is, quite simply, a stipulation of existing fact – that the evidence in the case does not show firearm possession "during and in relation to" the racketeering enterprise. This court has considered similar language as self-executing, because, by its own terms, the contractual provision does not commit the government to any future action. See United States v. Reeves, 255 F.3d 208, 209-10 (5th Cir. 2001). In any case, we have recognized a distinction between the proof required for the 2D1.1(b)(1) enhancement and the proof needed to show possession "during and in relation to" a drug trafficking crime. See, e.g., United States v. Hernandez, 457 F.3d 416, 423 (5th Cir. 2006).

It is well-settled that the express terms of the contract control; however, this court must also determine whether the government's conduct was consistent with the defendant's reasonable understanding of the agreement. See

Huddleston, 929 F.2d at 1032. We first consider whether Guerrero's basic premise is correct; that is, whether the firearms stipulation – which itself promises nothing – was the result of negotiations that Guerrero reasonably expected to prevent the application of USSG § 2D1.1(b)(1), or foreclose the government from providing information that could support such application. Noticeably absent from Guerrero's brief is a discussion of the fact that the same plea agreement upon which Guerrero relies expressly recognizes the government's clear obligation to provide information in its possession to Probation. See, e.g., United States v. Avery, 621 F.2d 214, 216 (5th Cir. 1980) (parties cannot agree to withhold relevant information from the court). Certainly this statement in the plea agreement should have tempered any expectation Guerrero had that the government would not provide information to Probation.

Assuming arguendo that Guerrero had a reasonable expectation that the government would not do anything to "contradict" the stipulation, we conclude that it did not violate such an agreement. It provided truthful information to Probation and responded to the district court's questions. See United States v. Block, 660 F.2d 1086, 1091 (5th Cir. Unit B Nov. 1981) ("Efforts by the Government to provide relevant factual information or to correct misstatements are not tantamount to taking a position on the sentence and will not violate the plea agreement.") Further, we conclude that the government's repeated objections to the PSR's recommendation of a firearms enhancement negated any implication from any statement the government made during sentencing that it was somehow supporting the application of the enhancement.[2]

---

[2] Again, the government provided no information, and the district court did not find, that Guerrero possessed a firearm "during and in relation to" the conspiracy; instead, the court applied the enhancement because "'a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.'" United States v. Eastland, 989 F.2d 760, 770 (5th Cir. 1993) (quoting United States v. Hooten, 942 F.2d 878, 882 (5th Cir. 1991)).

Guerrero agreed to a plea agreement that promised nothing and expressly acknowledged that the government would provide information to Probation. He pleaded guilty to a count that contained information about the possession of firearms in connection with the racketeering conspiracy. Under the facts of this case, the government's conduct does not constitute a breach of the plea agreement. We find no error – plain or otherwise.

Accordingly, the judgment of the district court is AFFIRMED.