# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 15, 2010

No. 09-40268

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CHRISTOPHER EARL ROBERTS,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, DeMOSS, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Christopher Earl Roberts entered into a plea agreement with the Government and, following a guilty plea of violating 21 U.S.C. § 841(a)(1), was sentenced to 168 months of imprisonment. This appeal presents the question whether the Government breached the plea agreement by lending its support to an enhanced sentence for Roberts. Roberts seeks remand, specific performance of the plea agreement, and resentencing. We order the relief sought because we hold that at sentencing, the Government supported an enhancement for career offenders, which is not a mere adjustment under the sentencing guidelines, but instead constitutes a new base offense level.

No. 09-40268

I.

Roberts pled guilty, pursuant to a plea agreement, of possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). He entered into a plea agreement that stipulated that the base offense level was 30, and that he was eligible for a reduction of two levels. The agreement stipulated that the "parties understand that the Court is not bound by these agreements [and] that other specific offense characteristic or guideline adjustments may increase or decrease the appropriate range." In the agreement, Roberts waived the right to appeal the conviction and sentence on all grounds other than: (1) a sentence in excess of the statutory maximum; and (2) a claim of ineffective assistance of counsel.

The presentence report ("PSR") recommended a base offense level of 30, pursuant to U.S.S.G. § 2D1.1(c)(5) and consistent with the plea agreement. But the PSR also recommended an increase in the offense level to 37 pursuant to U.S.S.G. § 4B1.1 (the "career offender enhancement"). Roberts qualified as a career offender because he was previously convicted for aggravated assault and use of a communication facility to facilitate a felony. The PSR further recommended a downward adjustment of three for the acceptance of responsibility, reducing the total offense level to 34. The corresponding guidelines sentencing range was 262-327 months.

During the sentencing hearing, Roberts argued that the Government breached its agreement by supporting the application of the career offender enhancement, and thus failing to adhere to the stipulated base offense level of 30. Roberts also asserted that the career offender enhancement is not a guideline *adjustment* to a base offense level but instead is a new base offense level. The court asked the prosecutor for his response. The prosecutor answered that Roberts did not get the benefit of the bargain struck by the plea agreement because of his "extensive criminal history", not as a result of any breach of the

2

plea agreement.  Further, he argued that the career offender enhancement represented a guideline adjustment, not a new base level, and stated that guideline adjustments were permitted under the terms of the plea agreement.

The district court overruled Roberts's objection to the Government's support of the application of the career offender enhancement, finding that it constituted a guideline adjustment.  The district court further found that the calculation of a Chapter Two base offense level determination is separate from the calculation of an adjustment, such as the Chapter Four career offender adjustment.  Consequently, the district court concluded that the plea agreement had not been breached, and imposed a sentence of 168 months.  Roberts appeals this holding, and his sentence.

## II.

As a preliminary matter, the Government seeks dismissal of the appeal based upon the waiver provision in the plea agreement.  Roberts's appeal waiver does not affect his ability to raise a breach argument because an alleged breach of a plea agreement may be raised despite a waiver provision. *See United States v. Keresztury*, 293 F.3d 750, 757 (5th Cir. 2002) (where the Government has breached a plea agreement, the defendant is necessarily released from any appeal provision contained therein).  We therefore consider two issues Roberts raises on appeal:  (1) that the career offender enhancement creates a new base offense level, rather than adjusting an existing offense level; and (2) that, accordingly, the Government breached its plea agreement by failing to adhere to its stipulation that the base offense level was 30.[1]

---

[1] Roberts also argued that the career offender enhancement was improperly applied to him because his state and federal sentences ran concurrently.  We are not persuaded by the merits of this argument, but need not reach it to find that the Government breached the plea agreement.

A.

We first address whether the career offender enhancement is a guideline adjustment, not a change in the base offense level.  Then, in the light of our conclusion, we will turn to consider whether the Government has breached the plea agreement by supporting the increased base offense level provided under the career criminal provision.

This court has not ruled on whether the career offender enhancement is correctly considered a guideline adjustment or base offense level.  It has, however, spoken to the issue in dicta that can be construed to support either interpretation of the statute.

On the one hand, this court has referred to the career offender enhancement as providing a new base level on multiple occasions.  *See, e.g., United States v. Anderson*, 591 F.3d 789, 790 (5th Cir. 2009) ("if the base level calculated under the career offender enhancement exceeds the base level calculated under the general drug crimes provision, then the career offender base level prevails"); *United States v. Rodriguez-Jaimes*, 481 F.3d 283, 284 (5th Cir. 2007) ("The presentence investigation report [ ] recommended a base offense level of thirty-seven because the probation officer determined that Rodriguez-Jaimes was a career offender pursuant to U.S.S.G. § 41B.1 . . .").

On the other hand, this court has held that the Government did not breach a plea agreement, but only in an unpublished per curiam opinion, albeit with similar facts to those presented in this case.  *See United States v. Traugott*, 364 F. App'x 925, 925 (5th Cir. 2010) ("The government did not breach the plea agreement by supporting the application of the career offender enhancement."). In *Traugott*, defendant Larry Stanley Traugott pled guilty to conspiracy to possess with intent to distribute 500 grams or more of methamphetamine.  He entered into a plea agreement with the Government that stipulated the applicable base offense level was 32.  Based on Traugott's prior convictions, the

district court applied the career offender enhancement under U.S.S.G. § 41B.1 to find an offense level of 37.  Traugott argued that the Government breached the plea agreement's base level stipulation by supporting the district court's application of the career offender enhancement during the sentencing hearing. This court found that the Government did not breach the plea agreement by supporting the application of the career offender enhancement.  *Id*. ("the plea agreement did not preclude application of the career offender enhancement"). The *Traugott* court did not explicitly consider whether the career offender enhancement was a guidelines adjustment or a new base offense level.

Thus, our review of the caselaw provides no apposite precedent. We must, therefore, decide whether the career offender enhancement is classified as a guidelines adjustment, or new base offense level.   The plain language of the career offender enhancement indicates that it establishes a new base offense level when it exceeds the level that would otherwise apply:  "If the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, *the offense level from the table in this subsection shall apply*."  U.S.S.G. § 4B1.1(b).  Rather than adjusting the prior offense level up or down by a certain number–as occurs under the adjustments set forth in Chapters Two and Three of the sentencing guidelines–§ 4B1.1 replaces the established base offense level.

Further, Chapter Four does not internally reference itself as being an adjustment, unlike Chapter Three. The title of Chapter Three is "Chapter Three - Adjustments."  *See, e.g.,* U.S.S.G. § 3.  The Chapter Three sub-chapters contain numerous references to their status as adjustments in their titles, background commentary, and explanatory notes.  *See, e.g.,* U.S.S.G. §3A1.1 ("Victim-Related *Adjustments*"); §3B1.1 ("This Part provides *adjustments* to the offense level . . .").

The Government's sole argument that the career offender enhancement is an adjustment rather than a new base level is contained in a footnote in its

No. 09-40268

brief.  It argues that the General Application Principles for the sentencing guidelines reference "adjustments" in Part B of Chapter 4.  ("Determine from *Part B of Chapter Four* any other applicable *adjustments*.")  U.S.S.G. § 1B1.1(f) (emphasis added).  We find this argument is not decisive when weighed against the more extensive and more persuasive counter arguments set forth above.

Thus, Section 4B1.1 is not structured as what is commonly thought of as an adjustment.  Instead, it replaces the base offense level under certain conditions.

B.

Roberts argues that the Government breached the plea agreement when it argued that he should receive an offense level greater than that stipulated in the plea agreement.  The Government argues that it was unreasonable for Roberts to believe that the plea agreement precluded the Government from arguing for the career offender enhancement pursuant to § 4B1.1(b).  "This court reviews a claim of a breach of plea agreement de novo, accepting the district court's factual findings unless clearly erroneous."  *See United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008) (internal quotation and citation omitted), *cert. denied*, 130 S. Ct. 57, 61, 363 (2009).  The Government is required strictly to adhere to plea agreements.

> If a defendant pleads guilty as part of a plea agreement, the Government must strictly adhere to the terms and conditions of its promises in the agreement. . . . [A] plea agreement is construed strictly against the Government as the drafter.  To assess whether a plea agreement has been violated, this court considers whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement.

*Id*. (internal citations and quotations omitted).  The defendant bears the burden of demonstrating the underlying facts that establish breach by a preponderance of the evidence.  *United States v. Price*, 95 F.3d 364, 367 (5th Cir. 1996).

6

We cannot agree that it was unreasonable for Roberts to believe the agreement precluded the Government from supporting application of the career offender enhancement. The plea agreement provides that the "parties understand that the Court is not bound by these agreements [and] that other specific offense characteristics or guideline adjustments may increase or decrease the appropriate sentencing range." Although the plea agreement permits the Government to argue for "offense characteristics or guideline adjustments," it does not contemplate that the Government would argue for a new base offense level differing from the one stipulated in the agreement. Above, we rejected the Government's contention that application of the career offender enhancement is an adjustment. Instead, we have held that it resets the base offense level. Consequently, the plea agreement does not provide Roberts with a reasonable understanding that the Government may argue for application of the career offender enhancement.

Although this court is not controlled by the unpublished opinion in *Traugott,* comparing the facts of the cases illustrates what does constitute a reasonable understanding in a plea agreement. The language of the plea agreements entered into by Traugott and Roberts is substantially similar. In his rearraignment hearing, however, Traugott "expressly acknowledged his understanding that prior convictions could increase the applicable guidelines range . . ." *Traugott*, 364 F. App'x at 925. Thus, Traugott received express notice that the career offender enhancement might apply to his sentence. In contrast, Roberts was not informed that the career offender enhancement might apply to his sentence; the potential application of the provision was neither contained in his plea agreement nor discussed at his rearraignment hearing. More specifically, the parties in the respective cases had different notice regarding the career offender enhancement: the provision was specifically pointed out to Traugott, whereas Roberts never received notice that it might apply.

7

No. 09-40268

Consequently, the parties' reasonable understanding of the bargains they had struck with the Government differed. Traugott's reasonable understanding was that the career offender enhancement might apply. Roberts had no basis to believe that the career offender enhancement could reset the base level stipulated in the plea agreement.

Furthermore, the language of the guideline stipulations, as set out in the plea agreement, provides express notice that the reduction of two levels is subject to the recommendation of the Probation Office, but provides no similar notice that the agreed base level is subject to that recommendation. The relevant language in the plea agreement provides:

> GUIDELINE STIPULATIONS: The parties stipulate to the following factors that affect the appropriate sentencing range in this case:
>
> a. The base level under U.S. Sentencing Guidelines Manual § 2D1.1(c)(5) (2007) (U.S.S.G.) is 30;
>
> b. A reduction of two levels for acceptance of responsibility under U.S.S.G. § 3E1.1 applies; however, *this stipulation* is subject to the recommendation of the United States Probation Office. *If circumstances indicating that the Defendant has not accepted responsibility became known after entry of this agreement, this stipulation is void and Defendant may object to the failure of the Presentence Report to recommend the reduction.*

(First emphasis added; second emphasis in original). Accordingly, the plain language of the plea agreement suggests the reduction for acceptance of responsibility is subject to the discretion of the Probation Office but provides no similar condition for the base offense level.

## C.

Finally, the Government contends that it did not *argue for* the career offender enhancement, but instead only *agreed with* the recommendation of the

8

No. 09-40268

PSR. At sentencing, the prosecutor supported application of the career offender enhancement by emphasizing Roberts's "extensive criminal history." The prosecutor explicitly acknowledged that through the application of the career offender enhancement "the defendant simply doesn't get the benefit of that particular bargain but it's still a plea agreement that he signed and he entered into and I'm sure that there is other consideration in this plea agreement than that particular guideline calculation." Although he stated application of the enhancement was "simply a function of the defendant's criminal history, which the government has no control over," the prosecutor could have chosen to not take a position on the enhancement, but instead chose to remark on the appropriateness of its application. We therefore must examine whether his conduct constitutes advocation for the enhancement in violation of the plea agreement.

The Fifth Circuit addressed similar circumstances in *United States v. Munoz*, 408 F.3d 222 (5th Cir. 2005). In *Munoz*, defendant Munoz pled guilty to conspiracy to committing wire fraud and mail fraud and conspiracy to commit money laundering, for his participation in a Ponzi scheme. *Id.* at 224. Munoz entered into a plea agreement, in which the parties agreed to a set total offense level of 25. *Id.* at 225. The PSR instead recommended a total offense level of 29, based on the application of an abuse of trust enhancement not included in the plea agreement. *Id.* At sentencing, the court asked the prosecutor several questions about the enhancement, which he answered affirmatively, indicating support for application of the enhancement. *Id.* The district court sentenced Munoz to 90 months of imprisonment for the money laundering conviction and 60 months of imprisonment for the wire fraud conviction, to run concurrently. *Id.* 225-26. Munoz appealed, contending that the Government breached the plea agreement by stating that the abuse of trust enhancement should apply during the sentencing hearing. *Id.* at 226. Munoz asked for specific performance of the

agreement, which would require the court to vacate his sentence and remand his case for resentencing before a different judge. *Id*.

The Fifth Circuit found that the Government breached the plea agreement. *Id*. at 227. The plea agreement stated that the parties "agreed that the applicable sentencing guideline should be calculated as follows" in a calculation that did not include an enhancement for abuse of trust. *Id*. Despite this term, the prosecutor responded to questions in a manner that advocated application of the abuse-of-trust enhancement. *Id*. ("the government implicitly promised not to argue for an enhancement that was not part of the plea agreement"). The court found that the prosecutor's conduct at the sentencing hearing breached the plea agreement. Consequently, the court vacated Munoz's sentence and remanded to the district court for reassignment to a different judge and resentencing.

Notably, *Munoz* deals with an abuse of trust enhancement instead of the career offender enhancement. Its logic is, however, applicable to this case and consistent with a line of cases from other circuits holding that a prosecutor may not argue for an enhancement that would raise an offense level when the Government agreed to a stipulated base offense level in the plea agreement. *See United States v. Rivera*, 357 F.3d 290, 295 (3d Cir. 2004) ( "Because the Offense Level was specifically stipulated to, whereas the government's right to advocate a role enhancement was not, the government's endorsement of an enhancement that would raise the Offense Level above the stipulated level contravened the plea agreement."); *United States v. Taylor*, 77 F.3d 368, 371 (11th Cir. 1996). Further, at least one other circuit has directly held that the Government breaches a plea agreement by advocating for application of the career offender enhancement if the plea agreement explicitly set forth a different base level. *See United States v. Fowler*, 445 F.3d 1035 (8th Cir. 2006).

No. 09-40268

Accordingly, our precedent suggests that the prosecutor in this case violated the plea agreement by arguing, even if mildly, that the career offender enhancement should apply after agreeing to a different, lower base offense level in the plea agreement. Roberts's reasonable understanding of the plea agreement was that it stipulated a base offense level. By arguing for a different base offense level at the sentencing hearing, the Government failed to uphold its end of the bargain. *See Munoz*, 408 F.3d at 226. The Government's conduct was inconsistent with the defendant's reasonable understanding of the plea agreement.

### III.

The Government is obligated to live up to the bargain it strikes in plea agreements. *Elashyi*, 554 F.3d at 501. In this case, the Government stipulated a base offense level of 30 in the plea agreement. At the sentencing hearing, the Government agreed to application of the career offender enhancement. This reset the base level to 37. Roberts's reasonable understanding of the plea was that it stipulated a base offense level of 30. By supporting a different base offense level at the sentencing hearing, the Government failed to uphold its end of the bargain.[2] The Government's conduct was inconsistent with the defendant's reasonable understanding of the plea agreement. Accordingly, the Government breached the plea agreement and Roberts is entitled to specific performance of the agreement.

For the foregoing reasons, we VACATE Roberts's sentence and REMAND to the district court for reassignment to a different judge and for resentencing, not inconsistent with this opinion.

VACATED and REMANDED.

---

[2] Notably, a prosecutor for the U.S. Attorney's office, which entered the plea agreement, advocated for the increased base level at the sentencing hearing. This, of course, differs from a PSR or court unilaterally arguing for or applying the career offender provision.

HAROLD R. DeMOSS, JR. dissenting:

In this case we consider whether application of the career offender provision found in Chapter Four of the Sentencing Guidelines is an "adjustment" as such term is contemplated by the Guidelines and, by implication, the plea agreement entered into between the government and Roberts. *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.1. I would answer "yes" for two reasons. First, I find that the structure, sequencing, and express language of the Guidelines clearly indicate that application of the career offender provision is a guideline adjustment. And second, there being no controlling case law on point, I find that the decision in *United States v. Traugott* is both directly on point and the most persuasive analysis available. 364 F. App'x 925 (5th Cir. 2010) (GARZA, DeMOSS, and CLEMENT, JJ.) (per curiam) (unpublished). I would find that the government's argument in favor of applying the career offender provision is wholly consistent with a reasonable understanding of the plea agreement, and that the government did not breach any term of the plea agreement. I would hold that Roberts's appeal waiver is valid and affirm the district court's sentence. I respectfully dissent.

## THE PLEA AGREEMENT

The plea agreement entered into between the government and Roberts stipulates to the following: (1) Roberts's base offense level under § 2D1.1(c)(5) is 30; (2) a two-level reduction for acceptance of responsibility applies under § 3E1.1; and (3) other specific offense characteristics or guideline adjustments may increase or decrease the appropriate sentencing range and either party may argue for such increases or decreases. These stipulations are neither vague nor complicated. The first stipulation provides a starting point for sentencing by avoiding argument on the quantity of cocaine base at issue (68.59 grams). Base offense level 30 simply refers to a quantity of cocaine

12

No. 09-40268

base of at least 50 grams but less than 150 grams, nothing more. *See* § 2D1.1(c)(5). The second stipulation provides that, unless the probation officer determines that Roberts has not actually accepted responsibility for his offense, Roberts's total offense level—which is not stipulated to—will be reduced by two levels. *See* § 3E1.1. The third stipulation provides that both the government and Roberts may consider the facts in the forthcoming presentence report (e.g., employment record, educational background, substance abuse, family characteristics, extent and seriousness of criminal history) and argue at sentencing for increases or decreases to Roberts's offense level based on any applicable specific offense characteristic or guideline adjustment.

The plea agreement makes no reference to Chapter Four of the Guidelines, including the career offender provision found in § 4B1.1(b). Neither does it reference Roberts's extensive criminal history which qualifies him as a career offender.[1] This is unsurprising. In most cases, a presentence report sets forth a defendant's official criminal history and establishes the factual basis for the government to argue for applying the career offender provision. The presentence report is completed by a probation officer well after a plea agreement is entered into but prior to sentencing.[2] Thus, at the time a plea agreement is entered into, the government often does not have all of the facts relevant to sentencing. Only the defendant (and possibly defense counsel) would know the full extent and seriousness of the defendant's

---

[1] Roberts qualifies as a career offender because (1) he was at least 18 years old when he committed the instant offense, (2) the instant offense is a controlled substance felony, and (3) Roberts has at least two prior controlled substance felonies. *See* § 4B1.1(a). The only question is whether the government may argue in favor of applying the career offender provision. For the reasons discussed above, I would answer yes.

[2] For example, in this case the plea agreement was entered into by the government and Roberts on July 21, 2008, but the presentence report was not disclosed to either party until October 31, 2008, more than three months later.

13

criminal history.  What would be surprising is the government stipulating in a plea agreement to ignore a defendant's criminal history, and a defendant expecting it to ignore such history, when such relevant facts will likely remain uncertain to the government until closer to sentencing.

The plea agreement expressly reserves the government's right to argue in favor of "guideline adjustments."  We should therefore look to the Guidelines to determine whether applying the career offender provision constitutes an "adjustment."  We should then look to the relevant case law to the extent it can aid us in reaching the correct determination.  I believe that both the Guidelines and the case law support finding the application of the career offender provision to be an adjustment.

## THE GUIDELINES

We should first look to the Guidelines themselves.  The Guidelines are purposefully structured to provide for application of its provisions in a precise sequence.  *See* § 1B1.1; *United States v. Martinez-Noriega*, 418 F.3d 809, 812 (8th Cir. 2005); *United States v. Ventura*, 353 F.3d 84, 92 (1st Cir. 2003).  For drug offenders such as Roberts, Chapter Two establishes what is clearly labeled a "Base Offense Level" solely on the basis of the quantity of drugs. *See* § 2D1.1(c).  The plea agreement stipulates to a base offense level of 30 *under Chapter Two*.

Only after the base offense level is established under Chapter Two do other provisions of the Guidelines apply.  Chapter Three is titled "Adjustments," but the Guidelines in no way indicates that Chapter Three is its exclusive source of adjustments.  Chapter Four determines a defendant's "Criminal History and Criminal Livelihood" and it includes a provision that may raise the already established base offense level for "career offenders." *See* § 4B1.1(b).  The table in Chapter Four simply sets forth what "Offense Level" is to be used "if [the listed offense level is] greater than the offense

14

No. 09-40268

level otherwise applicable." *Id.* It does not purport to establish a "new" or "replacement" base offense level, as the majority labels it. By its own terms, the career offender provision can only be used to increase (another way of saying "enhance" or "adjust upward") a separate and previously established offense level.

Moreover, in its Application Instructions, the Sentencing Commission gives specific instructions to "[d]etermine the defendant's criminal history category as specified in Part A of Chapter Four [and then] [d]etermine from Part B of Chapter Four any other applicable *adjustments*." § 1B1.1(f) (emphasis added). Thus, the Commission itself considers application of the career offender provision found in Part B of Chapter Four to be an "adjustment" as it understands such term. I agree with the Commission's interpretation of the Guidelines.

### THE CASE LAW

After we consider the structure, sequencing, and express language of the Guidelines, we should look to controlling or persuasive case law. Like the majority, I have not found any published opinion from our circuit or any other circuit analyzing the specific issue we face today.

However, we considered this exact question earlier this year in *Traugott*, a case with nearly identical facts and a nearly identical plea agreement. *See* 364 F. App'x at 925. I would not dismiss our conclusion in that case as casually as does the majority. While *Traugott* is unpublished and therefore not controlling, it is persuasive and aids us in the correct determination of this case. *See* FED R. APP. P. 32.1(a); 5TH CIR. R. 47.5.4; *United States v. Meraz-Enriquez*, 442 F.3d 331, 333 (5th Cir. 2006). In *Traugott*, we stated that "the stipulation [under § 2D1.1(c)] merely confirms the appropriate guidelines section applicable to [the defendant's] offense. It does not preclude application of the career offender enhancement." *Traugott*,

15

No. 09-40268

364 F. App'x at 925. That is, when asked whether the government's right to argue in favor of "adjustments" at sentencing also included the right to argue in favor of applying the career offender provision, we answered "yes." *Id.* The only difference between this case and *Traugott* is that the *Traugott* defendant orally acknowledged that his criminal history could increase the applicable guidelines range, but such an acknowledgment simply restates what is already written in the stipulation. *Id.* I would follow *Traugott*.

The majority points to two published cases where we refer to the career offender offense level as a "base offense level," but both references involved no analysis of this specific issue (unlike *Traugott*) and were dicta. *See United States v. Anderson*, 591 F.3d 789, 790 (5th Cir. 2009); *United States v. Rodriguez-Jaimes*, 481 F.3d 283, 284 (5th Cir. 2007); *but see United States v. Hopkins*, 318 F. App'x 297, 298 (5th Cir. 2009) (unpublished) (stating in dicta that application of the career offender provision is an "adjustment"). The majority also points to two other published cases, but each of them involved stipulated "total" offense levels. *See United States v. Fowler*, 445 F.3d 1035, 1037 (8th Cir. 2006); *United States v. Rivera*, 357 F.3d 290, 295 (3d Cir. 2004). Those cases are easily distinguishable: the government in each of those cases argued for additional offense levels after it had stipulated to a "total" offense level; the government in this case only stipulated to the "base" offense level and expressly reserved the right to argue for adjustments to the base offense level.

I have found published cases in eight circuits that refer to the application of the career offender provision as an "adjustment." *See, e.g.*, *United States v. Hopkins*, 577 F.3d 507, 508 (3d Cir. 2009); *Martinez-Noriega*, 418 F.3d at 812; *United States v. Jeppeson*, 333 F.3d 1180, 1183 (10th Cir. 2003); *Ventura*, 353 F.3d at 92; *In re Sealed Case No. 98-3116*, 199 F.3d 488, 489 (D.C. Cir. 1999); *United States v. Unthank*, 109 F.3d 1205, 1208 (7th Cir.

16

No. 09-40268

1997); *United States v. Daly*, 974 F.2d 1215, 1218 (9th Cir. 1992); *United States v. Downs*, 955 F.2d 397, 399 (6th Cir. 1992). While I acknowledge that none of these cases specifically analyzed the issue we faced in *Traugott* and we decide today, I cite them to show that there is at least as much support in the non-controlling case law for my interpretation of "adjustment" as there is for the majority's interpretation. I believe that the most persuasive case law on point supports finding the application of the career offender provision to be an adjustment.

## CONCLUSION

I disagree with the majority's constricted reading of the term "adjustment." It is not based in the structure, sequencing, or express language of the Guidelines, nor is it founded upon controlling or particularly persuasive case law. Moreover, its denomination of any career offender offense level as a "new" or "replacement" base offense level is wholly without support.[3] I would hold that application of the career offender provision of Chapter Four—at least after a defendant's base offense level has already been established pursuant to § 2D1.1(c) in a drug case—is an adjustment. As such, because the government did not breach the plea agreement by arguing in

---

[3] Whether a base offense level is adjusted by a set number of levels (e.g., "increase by [X] levels") or adjusted to a pre-set level (e.g., "increase to level [X]") does not change the fact that the increase is an adjustment. For example, § 2D1.1(b)—the "specific offense characteristic" provision for drug crimes—provides in certain circumstances for a two- or three- level increase or, "if the resulting offense level is less than level [X], increase to level [X]." *See* § 2D1.1(b)(2), (10). Structurally, such an increase to a specific pre-determined level under § 2D1.1 is the same as § 4B1.1's "if greater than" increase to a specific pre-determined level. It too would be an impermissible "new" or "replacement" base offense level under the majority's reasoning, even though the plea agreement expressly permits the government to argue for specific offense characteristic increases at sentencing.

17

No. 09-40268

favor of applying the career offender provision, I would find Roberts's appeal waiver valid and affirm the district court's sentence.[4]

_____

[4] The district court ultimately sentenced Roberts to 168 months imprisonment.  This sentence is well below the range recommended by both the government and the presentence report (262–327 months) and is within the range that would be applied if the district court looked at the plea agreement's stipulated offense level and nothing else (140–175 months).  The original sentencing judge was not bound by the plea agreement, however, and neither will the next sentencing judge.  The next sentencing judge may decide to apply the career offender provision, following the presentence report's recommendation, even without the government's argument in favor of it.  It is very possible that Roberts will receive a much harsher sentence from a different sentencing judge on remand than the 168-month sentence he has today.