E. GRADY JOLLY, Circuit Judge:
Christopher Earl Roberts entered into a plea agreement with the Government and, following a guilty plea of violating 21 U.S.C. § 841(a)(1), was sentenced to 168 months of imprisonment. This appeal presents the question whether the Government breached the plea agreement by lending its support to an enhanced sentence for Roberts. Roberts seeks remand, specific performance of the plea agreement, and resentencing. We order the relief sought because we hold that at sentencing, the Government supported an enhancement for career offenders, which is not a mere adjustment under the sentencing guidelines, but instead constitutes a new base offense level.
I.
Roberts pled guilty, pursuant to a plea agreement, of possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). He entered into a plea agreement that stipulated that the base offense level was 30, and that he was eligible for a reduction of two levels. The agreement stipulated that the “parties understand that the Court is not bound by these agreements [and] that other specific offense characteristic or guideline adjustments may increase or decrease the appropriate range.” In the agreement, Roberts waived the right to appeal the conviction and sentence on all grounds other than: (1) a sentence in excess of the statutory maximum; and (2) a claim of ineffective assistance of counsel.
The presentence report (“PSR”) recommended a base offense level of 30, pursuant to U.S.S.G. § 2Dl.l(e)(5) and consistent with the plea agreement. But the PSR also recommended an increase in the offense level to 37 pursuant to U.S.S.G. § 4B1.1 (the “career offender enhancement”). Roberts qualified as a career offender because he was previously convicted for aggravated assault and use of a communication facility to facilitate a felony. The PSR further recommended a downward adjustment of three for the acceptance of responsibility, reducing the total offense level to 34. The corresponding guidelines sentencing range was 262-327 months.
During the sentencing hearing, Roberts argued that the Government breached its agreement by supporting the application of the career offender enhancement, and thus failing to adhere to the stipulated base offense level of 30. Roberts also asserted that the career offender enhancement is not a guideline adjustment to a base offense level but instead is a new base offense level. The court asked the prosecutor for his response. The prosecutor answered that Roberts did not get the benefit of the bargain struck by the plea agreement because of his “extensive criminal history”, not as a result of any breach of the plea agreement. Further, he argued that the career offender enhancement represented a guideline adjustment, not a new base level, and stated that guideline adjustments were permitted under the terms of the plea agreement.
The district court overruled Roberts’s objection to the Government’s support of the application of the career offender enhancement, finding that it constituted a guideline adjustment. The district court further found that the calculation of a Chapter Two base offense level determination is separate from the calculation of an adjustment, such as the Chapter Four career offender adjustment. Consequently, *244 the district court concluded that the plea agreement had not been breached, and imposed a sentence of 168 months. Roberts appeals this holding, and his sentence.
II.
As a preliminary matter, the Government seeks dismissal of the appeal based upon the waiver provision in the plea agreement. Roberts’s appeal waiver does not affect his ability to raise a breach argument because an alleged breach of a plea agreement may be raised despite a waiver provision. See United States v. Keresztury, 293 F.3d 750, 757 (5th Cir. 2002) (where the Government has breached a plea agreement, the defendant is necessarily released from any appeal provision contained therein). We therefore consider two issues Roberts raises on appeal: (1) that the career offender enhancement creates a new base offense level, rather than adjusting an existing offense level; and (2) that, accordingly, the Government breached its plea agreement by failing to adhere to its stipulation that the base offense level was 30.[1]
A.
We first address whether the career offender enhancement is a guideline adjustment, not a change in the base offense level. Then, in the light of our conclusion, we will turn to consider whether the Government has breached the plea agreement by supporting the increased base offense level provided under the career criminal provision.
This court has not ruled on whether the career offender enhancement is correctly considered a guideline adjustment or base offense level. It has, however, spoken to the issue in dicta that can be construed to support either interpretation of the statute.
On the one hand, this court has referred to the career offender enhancement as providing a new base level on multiple occasions. See, e.g., United States v. Anderson, 591 F.3d 789, 790 (5th Cir.2009) (“if the base level calculated under the career offender enhancement exceeds the base level calculated under the general drug crimes provision, then the career offender base level prevails”); United States v. Rodriguez-Jaimes, 481 F.3d 283, 284 (5th Cir.2007) (“The presentence investigation report [ ] recommended a base offense level of thirty-seven because the probation officer determined that Rodriguez-Jaimes was a career offender pursuant to U.S.S.G. § 41B.1 ...”).
On the other hand, this court has held that the Government did not breach a plea agreement, but only in an unpublished per curiam opinion, albeit with similar facts to those presented in this case. See United States v. Traugott, 364 Fed.Appx. 925, 925 (5th Cir.2010) (“The government did not breach the plea agreement by supporting the application of the career offender enhancement.”). In Traugott, defendant Larry Stanley Traugott pled guilty to conspiracy to possess with intent to distribute 500 grams or more of methamphetamine. He entered into a plea agreement with the Government that stipulated the applicable base offense level was 32. Based on Traugott’s prior convictions, the district court applied the career offender enhancement under U.S.S.G. § 41B.1 to find an offense level of 37. Traugott argued that the Government breached the plea agreement’s *245 base level stipulation by supporting the district court’s application of the career offender enhancement during the sentencing hearing. This court found that the Government did not breach the plea agreement by supporting the application of the career offender enhancement. Id. (“the plea agreement did not preclude application of the career offender enhancement”). The Traugott court did not explicitly consider whether the career offender enhancement was a guidelines adjustment or a new base offense level.
Thus, our review of the caselaw provides no apposite precedent. We must, therefore, decide whether the career offender enhancement is classified as a guidelines adjustment, or new base offense level. The plain language of the career offender enhancement indicates that it establishes a new base offense level when it exceeds the level that would otherwise apply: “If the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply.” U.S.S.G. § 4Bl.l(b). Rather than adjusting the prior offense level up or down by a certain number — as occurs under the adjustments set forth in Chapters Two and Three of the sentencing guidelines — § 4B1.1 replaces the established base offense level.
Further, Chapter Four does not internally reference itself as being an adjustment, unlike Chapter Three. The title of Chapter Three is “Chapter Three — Adjustments.” See, e.g., U.S.S.G. § 3. The Chapter Three sub-chapters contain numerous references to their status as adjustments in their titles, background commentary, and explanatory notes. See, e.g., U.S.S.G. § 3A1.1 (“Victim-Related Adjustments”); § 3B1.1 (“This Part provides adjustments to the offense level ... ”).
The Government’s sole argument that the career offender enhancement is an adjustment rather than a new base level is contained in a footnote in its brief. It argues that the General Application Principles for the sentencing guidelines reference “adjustments” in Part B of Chapter 4. (“Determine from Part B of Chapter Four any other applicable adjustments.”) U.S.S.G. § lBl.l(f) (emphasis added). We find this argument is not decisive when weighed against the more extensive and more persuasive counter arguments set forth above.
Thus, Section 4B1.1 is not structured as what is commonly thought of as an adjustment. Instead, it replaces the base offense level under certain conditions.
B.
Roberts argues that the Government breached the plea agreement when it argued that he should receive an offense level greater than that stipulated in the plea agreement. The Government argues that it was unreasonable for Roberts to believe that the plea agreement precluded the Government from arguing for the career offender enhancement pursuant to § 4Bl.l(b). “This court reviews a claim of a breach of plea agreement de novo, accepting the district court’s factual findings unless clearly erroneous.” See United States v. Elashyi, 554 F.3d 480, 501 (5th Cir.2008) (internal quotation and citation omitted), cert. denied, — U.S. -, 130 S.Ct. 57, 175 L.Ed.2d 44 (2009). The Government is required strictly to adhere to plea agreements.
If a defendant pleads guilty as part of a plea agreement, the Government must strictly adhere to the terms and conditions of its promises in the agreement .... [A] plea agreement is construed strictly against the Government as the drafter. To assess ■ whether a plea *246 agreement has been violated, this court considers whether the government’s conduct is consistent with the defendant’s reasonable understanding of the agreement.
Id. (internal citations and quotations omitted). The defendant bears the burden of demonstrating the underlying facts that establish breach by a preponderance of the evidence. United States v. Price, 95 F.3d 364, 367 (5th Cir.1996).
We cannot agree that it was unreasonable for Roberts to believe the agreement precluded the Government from supporting application of the career offender enhancement. The plea agreement provides that the “parties understand that the Court is not bound by these agreements [and] that other specific offense characteristics or guideline adjustments may increase or decrease the appropriate sentencing range.” Although the plea agreement permits the Government to argue for “offense characteristics or guideline adjustments,” it does not contemplate that the Government would argue for a new base offense level differing from the one stipulated in the agreement. Above, we rejected the Government’s contention that application of the career offender enhancement is an adjustment. Instead, we have held that it resets the base offense level. Consequently, the plea agreement does not provide Roberts with a reasonable understanding that the Government may argue for application of the career offender enhancement.
Although this court is not controlled by the unpublished opinion in Traugott, comparing the facts of the cases illustrates what does constitute a reasonable understanding in a plea agreement. The language of the plea agreements entered into by Traugott and Roberts is substantially similar. In his rearraignment hearing, however, Traugott “expressly acknowledged his understanding that prior convictions could increase the applicable guidelines range ...” Traugott, 364 Fed.Appx. at 925. Thus, Traugott received express notice that the career offender enhancement might apply to his sentence. In contrast, Roberts was not informed that the career offender enhancement might apply to his sentence; the potential application of the provision was neither contained in his plea agreement nor discussed at his rearraignment hearing. More specifically, the parties in the respective cases had different notice regarding the career offender enhancement: the provision was specifically pointed out to Traugott, whereas Roberts never received notice that it might apply. Consequently, the parties’ reasonable understanding of the bargains they had struck with the Government differed. Traugott’s reasonable understanding was that the career offender enhancement might apply. Roberts had no basis to believe that the career offender enhancement could reset the base level stipulated in the plea agreement.
Furthermore, the language of the guideline stipulations, as set out in the plea agreement, provides express notice that the reduction of two levels is subject to the recommendation of the Probation Office, but provides no similar notice that the agreed base level is subject to that recommendation. The relevant language in the plea agreement provides:
GUIDELINE STIPULATIONS: The parties stipulate to the following factors that affect the appropriate sentencing range in this case:
a. The base level under U.S. Sentencing Guidelines Manual § 2Dl.l(c)(5) (2007) (U.S.S.G.) is 30;
b. A reduction of two levels for acceptance of responsibility under U.S.S.G. § 3E1.1 applies; however, this stipulation is subject to the *247 recommendation of the United States Probation Office. If circumstances indicating that the Defendant has not accepted responsibility became knoum after entry of this agreement, this stipulation is void and Defendant may object to the failure of the Presentence Report to recommend the reduction.
(First emphasis added; second emphasis in original). Accordingly, the plain language of the plea agreement suggests the reduction for acceptance of responsibility is subject to the discretion of the Probation Office but provides no similar condition for the base offense level.
C.
Finally, the Government contends that it did not argue for the career offender enhancement, but instead only agreed with the recommendation of the PSR. At sentencing, the prosecutor supported application of the career offender enhancement by emphasizing Roberts’s “extensive criminal history.” The prosecutor explicitly acknowledged that through the application of the career offender enhancement “the defendant simply doesn’t get the benefit of that particular bargain but it’s still a plea agreement that he signed and he entered into and I'm sure that there is other consideration in this plea agreement than that particular guideline calculation.” Although he stated application of the enhancement was “simply a function of the defendant’s criminal history, which the government has no control over,” the prosecutor could have chosen to not take a position on the enhancement, but instead chose to remark on the appropriateness of its application. We therefore must examine whether his conduct constitutes advocation for the enhancement in violation of the plea agreement.
The Fifth Circuit addressed similar circumstances in United States v. Munoz, 408 F.3d 222 (5th Cir.2005). In Munoz, defendant Munoz pled guilty to conspiracy to committing wire fraud and mail fraud and conspiracy to commit money laundering, for his participation in a Ponzi scheme. Id. at 224. Munoz entered into a plea agreement, in which the parties agreed to a set total offense level of 25. Id. at 225. The PSR instead recommended a total offense level of 29, based on the application of an abuse of trust enhancement not included in the plea agreement. Id. At sentencing, the court asked the prosecutor several questions about the enhancement, which he answered affirmatively, indicating support for application of the enhancement. Id. The district court sentenced Munoz to 90 months of imprisonment for the money laundering conviction and 60 months of imprisonment for the wire fraud conviction, to run concurrently. Id. at 225-26. Munoz appealed, contending that the Government breached the plea agreement by stating that the abuse of trust enhancement should apply during the sentencing hearing. Id. at 226. Munoz asked for specific performance of the agreement, which would require the court to vacate his sentence and remand his case for resentencing before a different judge. Id.
The Fifth Circuit found that the Government breached the plea agreement. Id. at 227. The plea agreement stated that the parties “agreed that the applicable sentencing guideline should be calculated as follows” in a calculation that did not include an enhancement for abuse of trust. Id. Despite this term, the prosecutor responded to questions in a manner that advocated application of the abuse-of-trust enhancement. Id. (“the government implicitly promised not to argue for an enhancement that was not part of the plea agreement”). The court found that the prosecutor’s conduct at the sentencing *248 hearing breached the plea agreement. Consequently, the court vacated Munoz’s sentence and remanded to the district court for reassignment to a different judge and resentencing.
Notably, Munoz deals with an abuse of trust enhancement instead of the career offender enhancement. Its logic is, however, applicable to this case and consistent with a line of cases from other circuits holding that a prosecutor may not argue for an enhancement that would raise an offense level when the Government agreed to a stipulated base offense level in the plea agreement. See United States v. Rivera, 357 F.3d 290, 295 (3d Cir.2004) ( “Because the Offense Level was specifically stipulated to, whereas the government’s right to advocate a role enhancement was not, the government’s endorsement of an enhancement that would raise the Offense Level above the stipulated level contravened the plea agreement.”); United States v. Taylor, 77 F.3d 368, 371 (11th Cir.1996). Further, at least one other circuit has directly held that the Government breaches a plea agreement by advocating for application of the career offender enhancement if the plea agreement explicitly set forth a different base level. See United States v. Fowler, 445 F.3d 1035 (8th Cir.2006).
Accordingly, our precedent suggests that the prosecutor in this case violated the plea agreement by arguing, even if mildly, that the career offender enhancement should apply after agreeing to a different, lower base offense level in the plea agreement. Roberts’s reasonable understanding of the plea agreement was that it stipulated a base offense level. By arguing for a different base offense level at the sentencing hearing, the Government failed to uphold its end of the bargain. See Munoz, 408 F.3d at 226. The Government’s conduct was inconsistent with the defendant’s reasonable understanding of the plea agreement.
III.
The Government is obligated to live up to the bargain it strikes in plea agreements. Elashyi, 554 F.3d at 501. In this case, the Government stipulated a base offense level of 30 in the plea agreement. At the sentencing hearing, the Government agreed to application of the career offender enhancement. This reset the base level to 37. Roberts’s reasonable understanding of the plea was that it stipulated a base offense level of 30. By supporting a different base offense level at the sentencing hearing, the Government failed to uphold its end of the bargain.[2] The Government’s conduct was inconsistent with the defendant’s reasonable understanding of the plea agreement. Accordingly, the Government breached the plea agreement and Roberts is entitled to specific performance of the agreement.
For the foregoing reasons, we VACATE Roberts’s sentence and REMAND to the district court for reassignment to a different judge and for resentencing, not inconsistent with this opinion.
VACATED and REMANDED.

. Roberts also argued that the career offender enhancement was improperly applied to him because his state and federal sentences ran concurrently. We are not persuaded by the merits of this argument, but need not reach it to find that the Government breached the plea agreement.

. Notably, a prosecutor for the U.S. Attorney’s office, which entered the plea agreement, advocated for the increased base level at the sentencing hearing. This, of course, differs from a PSR or court unilaterally arguing for or applying the career offender provision.