# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 9, 2011

No. 10-30729

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MATTHEW B. PIZZOLATO

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, DAVIS, and GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant-Appellant Matthew B. Pizzolato pleaded guilty to multiple crimes related to his conduct in running a fraudulent "Ponzi" scheme. The plea agreement recommended an applicable sentencing range of 151 to 188 months under the Federal Sentencing Guidelines (the "Guidelines"). The district court disregarded the plea agreement's recommendation and imposed the statutory maximum sentence of 360 months. Appellant argues that the Government breached the plea agreement by providing the district court with facts and arguments supporting a longer sentence than the parties agreed upon. We find no merit to defendant's arguments and affirm.

No. 10-30729

I.

A federal grand jury indicted Matthew B. Pizzolato on 64 counts related to a Ponzi scheme he ran between 2005 and 2009 through which he defrauded over 180 investors of $19,500,000. The indictment included 52 counts of mail fraud, two counts of wire fraud, seven counts of money laundering, one count of securities fraud, one count of witness tampering, and one count of obstruction of justice.

Pizzolato entered into a Federal Rule of Criminal Procedure, rule 11(c)(1)(B) plea agreement with the Government under which he pleaded guilty to 21 counts of mail fraud, one count of wire fraud, three counts of money laundering, the one count of securities fraud, and the one count of witness tampering. The Government stipulated that "the agreed upon Guideline range for this defendant is 151-188 months . . . ." The Government also agreed that "this sentence should run concurrent as to all counts." The Government further agreed to a three-level downward adjustment for acceptance of responsibility. The Government agreed to request the dismissal of the remaining fraud and obstruction-of-justice counts.

The plea agreement stated that Pizzolato could receive a maximum statutory sentence of 240 months of imprisonment for each count of mail fraud, wire fraud, witness tampering, and securities fraud, and that he could receive a consecutive maximum statutory sentence of 120 months of imprisonment for money laundering. The agreement provided that "any discussions with defendant's attorney or anyone else regarding sentencing guidelines are merely rough estimates and the Court is not bound by those discussions." It further provided that the Guidelines are advisory and not mandatory, and that the district court could impose the maximum term of imprisonment allowed by law. Pizzolato also waived his right to appeal his conviction or sentence on any ground, and waived his right to pursue postconviction relief except to the extent

2

No. 10-30729

that ineffective assistance of counsel affected the validity of the appeal waiver or of his guilty plea.

At rearraignment, the district court asked Pizzolato if he understood that the court could impose the maximum sentences and that these sentences could be made to run consecutively if the court accepted his guilty plea. Pizzolato answered affirmatively.[1]  The district court further asked Pizzolato if he understood that the Guideline recommendations in the plea agreement were not binding and that Pizzolato had no right to withdraw his plea if the court did not follow the Government's recommendation.  Pizzolato again answered affirmatively.[2]

---

[1]  The following exchange occurred at rearraignment:

The Court: Now do you fully understand that if I accept your guilty plea I could impose the maximum possible sentence I just related to you?

The Defendant: Yes, Your Honor.

The Court: Do you understand that I could sentence you consecutively rather than concurrently?

The Defendant: Yes, Your Honor.

[2] Again the court asked:

The Court: You understand that although the government has agreed to recommend the appropriateness of certain sentencing guidelines, such recommendation or request does not bind this Court once the Court accepts the guilty plea?  Do you understand that?

The Defendant: Yes, sir.

The Court: Further, do you understand that once I accept the plea agreement, you will have no right to withdraw your plea if I do not follow the government's recommendation?

The Defendant: Yes, sir.

Separately, the court again confirmed that the Defendant understood.

The Court: But everybody understand that [the plea agreement] is not binding

3

No. 10-30729

The prosecutor summarized the terms of the plea agreement and the parties' Guideline calculations, concluding his remarks with reference to a "term of imprisonment of 151 to 188 months.  Again, that's pursuant to 11(c)(1)(B). This is not binding on the Court.  It's just a recommendation of the parties in this case.  And the defendant and government agree that this sentence should run concurrently as to all counts."  The district court again made sure Pizzolato understood that the agreed-upon Guideline recommendations were not binding on the court and that the court could impose the statutory maximum penalties.[3] The court also reviewed the waiver provision and ascertained that Pizzolato understood it and knowingly and voluntarily agreed to it.

After rearraignment, the probation officer calculated Pizzolato's offense level, criminal history category, and applicable Guideline range consistent with the plea agreement's recommendation of 151-188 months.  Nevertheless, the pre-sentence report (the "PSR") suggested that an upward departure from the Guideline range might be appropriate because Pizzolato's offenses caused substantial non-monetary and emotional harm that the financial loss tables in the Guidelines did not take into account.  According to the PSR, "in addition to the financial hardships caused by the offense, the countless number of victim

---

on the Court?  I will make my own independent determination in determining what the guideline range is.  Although the guideline range, of course, as you know and, Mr. Pizzolato, you should know it's only advisory.  Everybody understand that?

Defense counsel: Yes, sir.

The Defendant: Yes, sir.

[3]

The Court: Does [the Defendant] also understand that I am no bound by the plea, by the sentencing guidelines, or the plea agreement, and that he can receive the maximum sentence with respect to each count to run consecutively if I chose to do so?

Defense counsel: Yes, Your Honor.

impact letters received in this case clearly reflects the severe emotional effect that the offense has had on the victims, the overwhelming majority of whom were elderly."

The PSR also suggested that a sentencing variance might be appropriate because Pizzolato continued to minimize the seriousness of the offense by maintaining that he never intended to steal from his investors but wanted to make enough profit to repay them, something that was not supported by the evidence. The PSR "submit[ted] that the reality of the defendant's culpability, considered with his statements to undermine the seriousness of the offense, may be a factor to provide grounds for a variance from the guideline range under 18 U.S.C. § 3553(a)."

After receiving the PSR, the district court notified the parties that it was contemplating an upward departure from the recommended Guideline range pursuant to § 2B1.1, comment. n.19(A)(ii) of the Guidelines, which suggests that a departure might be appropriate when a financial crime results in non-monetary harm. Alternatively, the district court indicated that it was contemplating an upward variance for the reasons set forth in 18 U.S.C. § 3553(a), which provides the general factors for the court to consider when imposing a sentence.

Pizzolato thereafter filed a sentencing memorandum in which he disagreed with the PSR's suggestion of an upward variance. The memorandum attempted to distinguish his offense from other Ponzi schemes for which defendants had received higher sentences. He mentioned the well-known cases of Bernard Madoff and Marc Dreier. He referred to these individuals as typical Ponzi scheme defendants who were older, educated, and sophisticated. In comparison he characterized himself as "a 26 year-old young man with very little education or life experience." Pizzolato also favorably compared himself to other defendants in Ponzi schemes who had received lower sentences than provided for by the

No. 10-30729

Guideline sentencing range. Specifically, he referred to Bobby Shamburger and Judith Zabalaoui, both of whom were sentenced in the Eastern District of Louisiana.[4]

The district court ordered the Government to respond to Pizzolato's sentencing memorandum. In its response, the Government stated that it stood by the plea agreement. However, the Government also argued that Pizzolato's objections to the PSR should be overruled. The Government distinguished Pizzolato's case from those mentioned in Pizzolato's memorandum where the defendants had received lighter sentences. The Government argued that Pizzolato's characterization of himself as a sheltered, unsophisticated young man was belied by his ability to obtain his victims' money and the methods he admitted using to do so. The Government characterized Pizzolato as a "smooth-talking salesman" and "a confident man" who was able "to pull off one of the largest Ponzi schemes ever in this district."

Pizzolato replied to the Government's response, questioning the Government's adherence to the plea agreement. Pizzolato asserted that the Government had only briefly indicated that it stood by its within-range sentencing recommendation, then argued at length against Pizzolato's request for a within-range sentence. Pizzolato also complained that the Government relied on conduct underlying his obstruction of justice charge even though the Government had agreed to dismiss that charge. Pizzolato denied that he was attempting to minimize the seriousness of his conduct; rather, he was attempting to raise his youth, inexperience, and lack of education as factors relevant to a sentencing determination.

---

[4] Shamburger was sentenced in 2003 to 126 months of imprisonment for a scheme resulting in losses in the tens of millions of dollars. *See United States v. Shamburger*, No. 2:94-CR-00377 (E.D. La. Aug. 25, 2003). Zabalaoui was sentenced in 2009 to 97 months of imprisonment for a scheme defrauding investors of approximately $3,000,000. *United States v. Zabalaoui*, No. 2:09-CR-0044 (E.D. La. Aug. 6, 2009).

No. 10-30729

Pizzolato articulated his objections to the PSR at the sentencing hearing. The district court stated that it would not consider the probation officer's conclusion that Pizzolato continued to minimize the seriousness of his offense, but rather would make its own independent determination on the issue.

Pizzolato further argued at the sentencing hearing that the Government breached the plea agreement by implicitly arguing for an upward departure in its response to his sentencing memorandum. The Government countered by arguing that it was required to respond with candor to Pizzolato's sentencing memorandum and, further, that it continued to stand by the plea agreement. The prosecutor again stated that the Guideline range set out in the plea agreement was the appropriate range.

The district court rejected Pizzolato's objections, noting that the plea agreement in Pizzolato's case fell under Rule 11(c)(1)(B) and, therefore, was not binding on the district court, as made clear at Pizzolato's rearraignment. The court determined that the Government had not agreed that a particular sentence would be appropriate: "So, pursuant to Rule 11(c)(1)(B), the government has agreed that a sentencing Guideline range is the appropriate Guideline, not that a particular sentence is appropriate. The only part of the plea agreement where the government has agreed that a particular sentence is appropriate is a sentence where it says that the government and the defendant agreed that the sentence should run concurrent as to all counts." The court concluded, therefore, that the Government did not breach the plea agreement. The court further noted that the Government had properly responded to Pizzolato's sentencing memorandum and that the Government never requested an upward departure or a non-Guideline sentence. The court made clear that the ultimate decision on sentencing rested with the court despite the parties' recommendations.[5]

---

[5] The Court:

No. 10-30729

The prosecutor then summarized the letters of several of Pizzolato's victims. The prosecutor also called several victims as witnesses pursuant to 18 U.S.C. § 3771(a)(4) and Federal Rule of Criminal Procedure 32(i)(4)(B). These victims testified in open court as to the devastating effect of Pizzolato's crimes on them and their families. The victims who testified were elderly and had lost most or all of their life savings to Pizzolato's crimes.

The prosecutor also called another witness, Kathy Almon, to testify with regard to Pizzolato's conduct underlying the obstruction of justice charge. Almon testified that Pizzolato visited her home and took documents when she was not watching, then later replaced them with forged documents. In response to Pizzolato's objections to Almon's testimony, the district court stated that it would not consider evidence relevant to the dismissed obstruction of justice count when determining whether to adjust Pizzolato's offense level, but that it would consider such evidence when determining whether to depart or vary from the applicable Guideline range.

Taking all the evidence into account, the court accepted the parties' agreed-upon Guideline range of 151-188 months as being the applicable range under the Guidelines. Nevertheless, the court found that an upward departure or non-Guideline sentence was appropriate. The court expressed its view that it had "never seen a fraud-based crime more horrendous than the one you have committed." The court considered the ages of many of Pizzolato's victims and their dim prospects for recovery; the amount of interest the victims could have

---

[T]he Government hasn't asked for an upward departure in this case. The government hasn't asked for a non-Guideline sentence. I think it responded, I think it responded appropriately, but its' the Court's decision. . . . Now I can tell you it doesn't make a difference to me what . . . the Government's position is on that, I independently determined that I was considering it and quite frankly after reading everything, including the PSR, I am of the opinion independently and what the Government thinks is irrelevant to me, that an upward departure and/or non-Guideline sentence is appropriate in this case. That's how I resolved that.

8

No. 10-30729

made in relatively safe investments, which many of them stated was their goal when they invested with Pizzolato; the duration of the scheme, which lasted about three years; the psychological damage to the victims; the number of victims; and the expansive reach and complexity of the scheme. The court explained that Pizzolato had taken the life savings of many of his vulnerable, elderly victims, distinguishing his case from other cases. The court's reasoning can be summarized by the following excerpt from the court's remarks to the Defendant:

> You stole from hardworking Americans who toiled their whole lives to provide for their families, insure stability in their later years, and provide some comfort for their children and grandchildren. This is not a case in which a great number of sophisticated and well-off individuals lost large sums of money representing only a small portion of their overall wealth. No, this is a case where a lot of people of modest means lost everything. You stole many victims' live savings. In particularly despicable fashion, many of your victims were the most susceptible members of our society; all looked forward to some modest degree of comfort during their golden years. Weaving a web of deception and practicing predatory acts, you ruthlessly pounced on some of our most vulnerable citizens. You falsely represented yourself to be an attorney. These people trusted you with their life savings and you, in turn, devastated them. You stole savings desperately needed by these fine people to achieve the most basic needs of their life. Worrying that these needs will go unmet, many of our victims fear they will never recover from their loss. I feel the same.

The district court imposed consecutive sentences of 240 and 120 months of imprisonment, the statutory maximum. Pizzolato now appeals, arguing primarily that the Government breached the plea agreement when it provided the district court with facts and arguments supporting a sentence above the agreed-upon Guideline range of 151-188 months. Pizzolato also argues that the district court abused its discretion by departing substantially from the Guidelines.

9

No. 10-30729

## II.

"This court reviews a claim of a breach of plea agreement *de novo*, accepting the district court's factual findings unless clearly erroneous." *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008). "The defendant bears the burden of demonstrating the underlying facts that establish breach by a preponderance of the evidence." *United States v. Roberts*, 624 F.3d 241, 246 (5th Cir. 2010).

We review a sentence to "ensure that the district court committed no procedural error . . ." and to "consider the substantive reasonableness of the sentence under an abuse-of-discretion standard." *United States v. Gall*, 552 U.S. 38, 51 (2007). The validity of an appeal waiver is reviewed *de novo*. *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005).

## III.

Pizzolato primarily argues that the Government breached the plea agreement. The Government argues that it did not breach the agreement and that, in any event, Pizzolato waived his appeal rights. "[A]n alleged breach of a plea agreement may be raised despite a waiver provision." *Roberts*, 624 F.3d at 244. Thus, the dispositive question on this appeal is whether the Government breached the agreement.

## A.

In determining whether the terms of a plea agreement have been violated, we must consider "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *Elashyi*, 554 F.3d 480 at 501 (5th Cir. 2008) (internal quotation marks and citations omitted). We apply general principles of contract law in order to interpret the terms of the plea agreement." *Id.* "The Government is required to strictly adhere to plea agreements." *Roberts*, 624 F.3d at 244.

10

No. 10-30729

Applying these principles, we conclude that the Government did not breach the plea agreement. The parties entered into the agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), which provides:

> [T]he plea agreement may specify that an attorney for the government will . . . recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court).

Consistent with the plain text of this Rule, the Government agreed only to make a non-binding recommendation to the district court that 151-188 months was the appropriate and applicable sentencing range under the Guidelines. The district court was correct, therefore, when it determined that the Government agreed only that a particular *sentencing range* was appropriate, not that a particular sentence was appropriate.

The Defendant could not have reasonably understood the plea agreement as providing otherwise. The agreement plainly did not bind the Government to recommend a particular sentence, as opposed to a particular Guideline sentencing range. Moreover, it is not uncommon for the Government to agree to the applicability of a particular Guideline range without binding itself to recommend a particular sentence under Rule 11(c)(1)(B). *See, e.g., United States v. Sotelo*, No. 10-40351, 2010 WL 4683699, *1 (5th Cir. Nov. 18, 2010) ("[T]he Government did not breach the plea agreement. The Government was obligated to request full credit for acceptance of responsibility and dismissal of the outstanding charges in the indictment, which it did. The agreement did not bind the parties to a particular sentencing range or recommendation."). And contrary to Appellant's assertions, the Government's agreement to a particular sentencing range was not worthless or illusory in the absence of an agreement to recommend a particular sentence. Calculation of the appropriate Guideline

11

range is often a complex and contested issue. The Government's agreement to an applicable Guideline range is significant because, although not mandatory, a sentencing court "must begin [its] analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 543 U.S. at 50 n.6. Pursuant to Pizzolato's plea agreement, the Government approved certain specific Guideline calculations, such as a three-level reduction for Pizzolato's acknowledgment of responsibility for his crimes.

The Government repeatedly stood by the plea agreement's calculation of a Guideline sentencing range of 151-188 months. The district court noted that prosecutors never requested an upward variance or a non-Guideline sentence. The district court accepted the parties' agreed-upon Guideline recommendations in full. Further, the Government consistently advocated for concurrent sentences, which, as the district court recognized, is the only affirmative recommendation the Government agreed to give with respect to the appropriateness of a particular sentence.

The Government's response to Pizzolato's sentencing memorandum opposing Pizzolato's objections to the PSR did not represent a breach of the plea agreement. Not only did the Government respond under a direct court order, but "[a] prosecutor has the duty as an officer of the court to inform the court of all factual information relevant to the defendant's sentence so that a sentence may be imposed upon a complete and accurate record." *United States v. Saling*, 205 F.3d 764, 768 (5th Cir. 2000) (internal quotation marks and citation omitted). "[P]arties cannot agree to withhold relevant information from the court." *United States v. Guerrero*, 299 F. App'x 331, 335 (5th Cir. Nov. 10, 2008) (citing *United States v. Avery*, 621 F.2d 214, 216 (5th Cir. 1980)). Moreover, the Government may not "stand mute in the face of factual inaccuracies or withhold relevant information from the court." *United States v. Block*, 660 F.2d 1086, 1091-92 (5th Cir. Unit B. Nov. 1981).

No. 10-30729

Thus, although the Government's response included negative and pejorative descriptions of Pizzolato as a "smooth-talking salesman" and "confidence man," the Government was entitled to counter Pizzolato's benign characterization of himself as uneducated and unsophisticated. The Government had a duty to correct what it believed to be Pizzolato's attempt to mislead the court. Moreover, the Government clarified both in its written response and orally before the district court that it continued to stand by the recommended Guideline sentencing range in the plea agreement of 151-188 months.

Similarly, the Government had the right to provide the court with Almon's testimony regarding Pizzolato's conduct in connection with the dismissed obstruction-of-justice charge because such conduct was relevant to Pizzolato's sentence. The prosecutor did not attempt to increase the agreed-upon Guideline calculations based on this testimony. Furthermore, the district court stated for the record that it considered Almon's testimony only when determining whether to depart from the Guidelines and not when calculating the appropriate Guideline range. The district court repeatedly noted that the Government never advocated for a Guideline range inconsistent with the plea agreement or a non-Guideline sentence.

The Government's consistent affirmation of the agreed-upon Guideline range contrasts with the situation in *United States v. Munoz*, 408 F.3d 222 (5th Cir. 2005) where the prosecutor affirmatively advocated for application of an abuse-of-trust sentence enhancement suggested by the PSR that had not been included in the Guideline calculations the parties reached in the plea agreement. *Id*. at 225-26. This court held that had the prosecutor "simply provided the court with accurate relevant facts, the Government would not have breached the agreement; but the Government crossed the line to breach by affirmatively advocating the application of the enhancement." *Id*. at 227-28. The prosecutor

13

No. 10-30729

in the present case never crossed the line into affirmatively advocating for a Guideline range or sentence conflicting with the plea agreement.

In any event, the district court independently decided to depart upwardly from the Guidelines. The record unequivocally demonstrates that the district court made the decision to upwardly depart in its sole discretion and based upon its independent assessment of the seriousness of Pizzolato's crime. The district court initially provided the parties with *sua sponte* notice that it was considering an upward departure or non-Guideline sentence. At the subsequent sentencing hearing, the court stated in plain language that the Government's recommendations were immaterial and that the court had independently determined a higher sentence was appropriate.[6] The record is replete with statements from the district court expressing its independent concern with the severity of Pizzolato's fraud, including the devastating effect his crimes had on a large number of vulnerable, elderly citizens.[7] The district court explained in detail how, in its opinion, such concerns were not accurately reflected in the applicable Guideline range.

The district court had the authority to disregard the parties' recommended Guideline range under Rule 11(b)(1)(B). Pizzolato knew that the district court had such authority. At rearraignment, Pizzolato clearly expressed his understanding that the plea agreement was not binding on the court and that the court could impose the statutory maximum sentence if it so chose.

In sum, the Government did not breach the plea agreement. In the exercise of its discretion, the district court disregarded the plea agreement's recommendations and independently decided to impose the statutory maximum sentence on Pizzolato.

---

[6] *See supra* n.5.

[7] "[T]his cold record, I state for the Court of Appeals, will never reflect the depth of pain that I witnessed today by these persons."

14

No. 10-30729

B.

Pizzolato further challenges the district court's substantial departure from the applicable Guideline range as an abuse of discretion. However, the record clearly demonstrates that (1) Pizzolato knowingly and voluntarily waived his appeal rights regarding any sentence not exceeding the statutory maximum; and (2) such a waiver applies to his challenge under the plea agreement's plain language because the district court's sentence does not exceed the statutory maximum. Therefore, Pizzolato waived his right to appeal the sentence on grounds that the district court abused its discretion in imposing the statutory maximum. *See United States v. Bond*, 414, F.3d 542, 544 (5th Cir. 2005).

IV.

For the foregoing reasons, the sentence is AFFIRMED.