**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 9, 2012

Lyle W. Cayce
Clerk

No. 11-40127

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ALBERTO LOZA-GRACIA,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before DeMOSS, CLEMENT, and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Alberto Loza-Gracia appeals the sentence imposed after he pled guilty to one count of conspiracy to possess with intent to distribute cocaine pursuant to a written, non-binding plea agreement. The plea agreement included a provision that Loza-Gracia's base offense level would be 26. The Presentence Investigation Report ("PSR") prepared by a United States Probation Officer acknowledged the agreement for a base level of 26 but nonetheless recommended a base offense level of 34 as a career offender based on Loza-Gracia's prior drug convictions. Loza-Gracia filed a sentencing memorandum challenging the PSR and alleging a violation of the plea agreement based on the higher base offense level. The

No. 11-40127

district court overruled Loza-Gracia's objection to the PSR, accepted the recommendation for a base offense level of 34, and sentenced Loza-Gracia to 188 months of imprisonment. Loza-Gracia argues that the Government breached the plea agreement when the PSR recommended a higher base level than that agreed to by the Assistant U.S. Attorney ("AUSA") and requests this court remand for resentencing with instructions requiring the Government to adhere to the agreed upon base level of 26.

Because the plea agreement entered into by the AUSA did not bind the Probation Office from making sentencing recommendations in the PSR nor did it bind the district court, we affirm Loza-Gracia's sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Loza-Gracia pled guilty in April 2010 to conspiracy to possess with intent to distribute cocaine pursuant to a written plea agreement containing a waiver-of-appeal provision. In the plea agreement, the AUSA and Loza-Gracia stipulated to a base offense level of 26 under the Sentencing Guidelines, based on the possession with intent to distribute at least 500 grams but less than two kilograms of cocaine. The agreement further stated that "the Court is not bound by these agreements" regarding the guideline recommendations and that the "plea agreement is only binding on the United States Attorney's Office for the Eastern District of Texas and does not bind any other federal, state, or local prosecuting authority." The waiver-of-appeal provision in the agreement provided that Loza-Gracia waived the right to appeal his conviction and sentence and further waived the right to contest his sentence in any post-conviction proceeding, but Loza-Gracia reserved the right to appeal a sentence in excess of the statutory maximum or ineffective assistance of counsel that affected the validity of the waiver.

The PSR, observing that the offense involved at least 500 grams but less than two kilograms of cocaine, set forth a base offense level of 26 pursuant to the

plea agreement and U.S.S.G § 2D1.1(c)(7). The PSR also acknowledged that Loza-Gracia was eligible for a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), reducing his offense level to 23.

However, the next section of the PSR, captioned "Chapter Four Enhancements," recalculated Loza-Gracia's offense level based on two prior drug convictions in his criminal history. Based on these prior offenses, the PSR recommended a higher base offense level of 34 because Loza-Gracia qualified as a career offender under U.S.S.G. § 4B1.1. After applying the same three-level reduction for acceptance of responsibility, the PSR's recommended offense level was 31. The recommended sentencing range was 188 to 235 months of imprisonment based on an offense level of 31 and a criminal history category of VI. For comparison, the recommended sentencing range for an offense level of 23 and a criminal history category of VI would have been 92 to 115 months of imprisonment. Under 21 U.S.C. § 841(b)(1)(B), the statutory minimum sentence was five years; the statutory maximum term was forty years.

Loza-Gracia did not file objections to the PSR, but he filed a sentencing memorandum that the district court construed as an objection. Defense counsel argued at sentencing that the plea agreement had been violated when the PSR recommended a higher base offense level than that agreed to by the parties:

> It's our position that when you change the base level offense from 26 to the career offense level of 34, that that is in violation of the plea agreement. I know that it's not exactly the same fact situation as the *Roberts* case; however, I do believe the probation officer, because it is part of the government, if they don't leave the base offense level at 26, it is a violation by the government of the plea agreement itself.

The district court verified that Loza-Gracia did not contest the validity of the three prior felonies noted in the PSR. While not contesting the validity of the prior convictions, defense counsel argued the prior convictions should only be

used to increase his criminal history but not be used to change the base offense level to 34 as a career offender.

The court also confirmed that Loza-Gracia's position was that because the probation department was an agency of the Government, the probation department violated the plea agreement by recommending a new base offense level of 34 instead of the agreed level of 26, even though the probation department was not a party to the plea agreement. Defense counsel explained that he believed that the AUSA had the authority to bind the Government as a whole, meaning both the U.S. Attorney's Office and probation services, and did so in this case. The Government responded simply, stating: "We stand by our plea agreement." The court denied Loza-Gracia's objection, reasoning that the probation department was not bound by the plea agreement, and the United States Attorney's Office had made no argument that would run afoul of the agreement, but noting that the issue was an appellate point that Loza-Gracia could explore. After adopting the PSR, the court sentenced Loza-Gracia to 188 months of imprisonment, the lower end of the recommend guidelines range, and a four-year term of supervised release. Loza-Gracia filed a timely notice of appeal.

On appeal, Loza-Gracia renews his argument that the Government breached the plea agreement when the PSR recommended a base offense level of 34 instead of 26 and requests "that the Government be ordered to specifically perform his plea agreement and that the case be remanded for resentencing before a different judge." He also argues that the career offender enhancement is not a guideline adjustment to a base offense level but is instead a new base offense level. The Government concedes that the career offender enhancement is not a guideline adjustment but instead constitutes a new base offense level. Thus, the only question on appeal is whether the probation office's

No. 11-40127

recommendation for a base offense level of 34 in the PSR constituted a breach of the plea agreement between Loza-Gracia and the AUSA.

## II. STANDARD OF REVIEW

This court reviews "a claim of breach of a plea agreement de novo, accepting the district court's factual findings unless clearly erroneous." *United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007). When assessing whether a plea agreement has been violated, this court applies general principles of contract law and considers "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *Id.* at 387–88 (quoting *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993)). The defendant bears the burden of demonstrating a breach of the agreement by a preponderance of the evidence. *Id.* at 387.

## III. ANALYSIS

Loza-Gracia, in essence, argues that he was the victim of a bait-and-switch at the hands of the AUSA and United States Probation Office. By reaching an agreement with the AUSA regarding a base offense level, Loza-Gracia believed he had reached an agreement with the Government generally and that he could only be sentenced according to the agreed upon base offense level.

However, Loza-Gracia's belief was mistaken and there was no bait-and-switch. The well-established separate organizational structures of the U.S. Attorney's Office and the U.S. Probation Office, combined with the plain language used in the plea agreement and colloquy, make it clear why the agreement on a base offense level in a plea agreed to by the AUSA is not binding on either the Probation Office or on the district court. Unlike the U.S. Attorney's Office, which is organized under the executive branch of the federal government, "the United States Probation Office is a branch of the federal judiciary and 'an investigatory and supervisory arm' of the sentencing court." *United States v. Talbert*, 501 F.3d 449, 453 (5th Cir. 2007); *see also United States v. Davis*, 151

No. 11-40127

F.3d 1304, 1306 (10th Cir. 1998) (noting the probation office and sentencing court maintain a close working relationship and that probation officers are permitted to communicate ex parte with the court). Thus, under general federalism principles, the U.S. Attorney's Office, as a member of the executive branch, does not have the authority to bind the Probation Office, as a member of the judiciary branch, with respect to sentencing recommendations.

Loza-Gracia was informed both in the plea agreement itself and during his plea colloquy that the court, and therefore by extension the Probation Office, was not bound by the plea agreement. The agreement used separate terms to refer to the U.S. Attorney's Office and the Probation Office, using "the Government" when discussing the former and the full name "United States Probation Office" when discussing the latter. The agreement also included a warning that it "is only binding on the United States Attorney's Office for the Eastern District of Texas."

In the plea colloquy, the court reviewed the specific language with Loza-Gracia and, with respect to the Sentencing Guidelines stipulations, explained that while there was an agreement with the Government on the base offense level, stipulations were still subject to recommendations by the Probation Office. The court also verified that Loza-Gracia understood the language in the plea agreement, that the court was not bound by the agreement, and that the court would not be able to determine a sentence until the Probation Officer completed a PSR and both he and the U.S Attorney had the opportunity to challenge the PSR. Finally, the court explained explicitly that the sentencing guidelines were not binding on the court and the sentence imposed could be different from "any estimate your attorney, the Government, or the probation officer may have given you." Given these clear warnings, Loza-Gracia was warned that his sentence was not explicitly tied to the agreed upon base offense level of 26 and could be adjusted based upon the findings of the Probation Office and the district court.

No. 11-40127

Additionally, the primary case relied upon by Loza-Gracia, *United States v. Roberts*, 624 F.3d 241 (5th Cir. 2010), and his other cited cases involving alleged breaches of plea agreements, are easily distinguishable.  In *Roberts*, the court held that the Government's support and advocacy for sentencing as a career offender violated a non-binding plea agreement in which the parties had agreed to a base offense level of 30. *Id.* at 243. The PSR acknowledged the agreement for a base level of 30 but also recommended the base level be increased to 37 because Roberts qualified as a career offender. *Id.*  At sentencing the Government actively argued in support of applying the career offender enhancement, which this court found was a breach of the plea agreement. *Id.* at 245–46.  Moreover, the court in *Roberts* acknowledged there was a significant difference between an AUSA advocating for a base level higher than that agreed to in a plea and the PSR or district court unilaterally arguing for or applying the career offender provision. *Id.* at 248 n.2.

Here, the AUSA at the sentencing hearing did not voice any support or advocate for the application of the career offender provision but instead simply maintained that the Government stood by the plea agreement. Considering the U.S. Attorney's Office does not have control or oversight of PSR recommendations made by U.S. Probation Officers, this court cannot ask a U.S. Attorney to do more than stand by a plea agreement it has made and, in doing so, this AUSA did not breach the agreement. Other case law illustrates similar results—a plea agreement is breached when the Government agrees to one thing at the plea but then actively advocates for something different at sentencing. *See*, *e.g.*, *United States v. Munoz*, 408 F.3d 222, 227 (5th Cir. 2005) (holding that the Government implicitly promised not to argue for an abuse-of-trust adjustment that was not a part of the plea agreement and breached the agreement by arguing for that adjustment at sentencing); *United States v. Saling*, 205 F.3d 764, 767 (5th Cir. 2000) (holding that the Government breached

7

a plea agreement recommending concurrent sentences by arguing for consecutive sentences at sentencing).

Finally, we note that our decision here comports with a prior unpublished decision of this court, *United States v. Traugott*, 364 F. App'x 925 (5th Cir. 2010), which held that the Government did not breach a plea agreement under similar factual circumstances. In *Traugott*, the plea agreement included a stipulation for a base offense level of 32 based on a plea for conspiracy to possess with intent to distribute methamphetamine. However, in light of information in the PSR that Traugott had prior convictions for a crime of violence and a drug trafficking crime, the district court applied the career offender enhancement which increased the offense level to 37. This court noted that the plea stipulation "merely confirms the appropriate guidelines section applicable to his offense. It does not preclude application of the career offender enhancement." *Id.* Also, Traugott had acknowledged at his plea colloquy that the district court was not bound by the plea agreement and that his guideline range could be increased based on guideline adjustments. Accordingly, the court held: "The government did not breach the plea agreement by supporting the application of the career offender provision," and the district court did not err by applying the career offender provision. *Id.*

## IV. CONCLUSION

For the foregoing reasons, Loza-Gracia's sentence is AFFIRMED.