# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2022

Lyle W. Cayce
Clerk

No. 22-50070

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

SAMUEL RAY RICE,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:21-CR-263-1

Before WIENER, HIGGINSON, and WILSON, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:*

Samuel Ray Rice appeals his 60-month prison term for conspiracy to commit wire fraud, claiming that the Government breached the plea agreement in which the Government, but not the district court, agreed to a sentencing range of 24 to 30 months. According to Rice, the Government violated the plea agreement by facilitating the statement of a victim who

---

* This opinion is not designated for publication. *See* 5TH CIRCUIT RULE 47.5.

asked the district court to impose the maximum sentence available and by failing to correct a purportedly false statement by the victim's brother.

I.

In pleading guilty, Rice admitted that, as the financial controller for a company, he made unauthorized transfers of approximately $3 million of company funds. In the written plea agreement, Rice and the Government agreed to an appropriate sentencing range of 24 to 30 months in prison, explicitly that, "at sentencing, [Rice would] not argue for or request a sentence below 24 months imprisonment and the Government [would] not argue for more than 30 months imprisonment." However, the agreement also made clear that it was not binding on the district court, which remained free to sentence Rice to "anywhere within the statutory range of punishment."

At the sentencing hearing, the Government notified the district court that Fred Barron, the owner of the company, wished to provide a victim impact statement. After describing how Rice's actions had harmed both his family and his company, Fred Barron asked the district court to impose "the maximum sentence permitted by law for his crimes." When asked whether either he or the company were asked to give input regarding the sentencing range, Fred Barron stated that they "were aware of what the Sentencing Guidelines were, if that's the question." Rephrasing the question, the district court asked whether the company agreed with the proposed 24- to 30-month sentencing range. Fred Barron responded that it did not, although he confirmed that this disagreement had not been conveyed to the Government beforehand. The district court then asked whether the company was consulted prior to the execution of the plea agreement. Fred Barron referred the question to Steve Barron, his brother and the company's attorney, who answered that the company was not "consulted during the—negotiations"

and was instead advised of the recommended sentencing range "after the fact."

Following this exchange, the Government reiterated that it stood by the plea agreement, recommending a sentence within the agreed upon range due to Rice's cooperation: "[M]y understanding is that the Government continues to believe that the range agreed to in the plea agreement is appropriate, and that I believe that was due largely to cooperation by the defendant in this case."

The district court, in turn, stated that it was "not persuaded that it should sentence within the recommendation . . . of the parties," and sentenced Rice to a term of 60 months imprisonment.

Rice objected that the sentence was procedurally and substantively unreasonable, arguing that the Government had breached its plea agreement to "support and recommend a sentence of 24 to 30 months" by "call[ing] a witness who specifically spoke against that recommendation." The district court responded that the victim had the right to address the court and that the 60-month sentence was appropriate "regardless of any victim information [the district court] received today."

Two days after judgment was entered, Rice moved the district court to reconsider the sentence or reconvene the sentencing hearing to allow further development of the record regarding the victims' knowledge of the plea deal. Taking no position on the merits of the motion, the Government filed a response from the lead prosecutor providing additional information about the Barrons' involvement during the plea negotiations.[1] Specifically,

---

[1] The lead prosecutor was unable to be present at the sentencing hearing and therefore had no opportunity to respond contemporaneously to statements indicating that the victims were not consulted about and were not in agreement with the plea agreement.

the lead prosecutor stated that he had "several conversations giving Mr. [Steve] Barron updates on the status of the case," and that he had spoken with Steve Barron about the proposed resolution once the parties had reached a deal in principle. The lead prosecutor wrote that Steve Barron had initially indicated that he wished for a higher amount of incarceration. The lead prosecutor responded by explaining the reasons for the Government's position and ended the conversation "with the impression that all interested parties were fine with the proposed resolution."

## II.

We review the alleged breach of the plea agreement de novo. *See United States v. Loza-Gracia*, 670 F.3d 639, 642 (5th Cir. 2012). Rice is correct that the appeal waiver does not bar consideration of his arguments. *See United States v. Casillas*, 853 F.3d 215, 217 (5th Cir. 2017) ("Even when the plea agreement includes a waiver of the right to an appeal . . . , a defendant may appeal to claim a breach of a plea agreement.").

Rice first contends that the Government violated the plea agreement by calling a witness who requested a sentence above the parties' agreed upon range. But federal law grants victims the right to be heard at sentencing, 18 U.S.C. § 3771(a)(4), and requires the Government to make its "best efforts" to see that they are "notified of, and accorded" that right, § 3771(c)(1). As to the content of that victim impact statement, because the Government has no "control or oversight" of a victim, it could not be asked to "do more than stand by a plea agreement it ha[d] made" in the face of the victims' statements. *United States v. Loza-Gracia*, 670 F.3d 639, 643–44 (5th Cir. 2012) (explaining that because, as here, the plea agreement specified that the "Government" referred only to the prosecuting U.S. Attorney's Office, only that office was bound and therefore it was not a breach of the plea agreement for the probation office to advocate for a guidelines enhancement). The

Government did so, unequivocally reaffirming to the district court that it recommended a sentence within the proposed range.

Nevertheless, Rice still contends that the Government failed to adequately advocate for the agreed-upon sentencing range, breaching the plea agreement. To assess whether a plea agreement has been violated, we apply general principles of contract law and look to "whether the [G]overnment's conduct is consistent with the defendant's reasonable understanding of the agreement." *Id.* at 642 (citation omitted). Accordingly, we have found that "a plea agreement is breached when the Government agrees to one thing at the plea but then actively advocates for something different at sentencing." *Id.* at 644. Here, the Government "complied with its literal obligations under the plea agreement," *Casillas*, 853 F.3d at 218, which required that the Government recommend a sentence within the agreed upon range.

The case upon which Rice relies, *United States v. Grandinetti*, 564 F.2d 723 (5th Cir. 1977), is distinguishable. There, the court found that the Government violated its agreement to recommend a specific sentence where the prosecutor told the sentencing court that he had "very serious problems" with the legality and propriety of the recommendation. *Id.* at 725–26. In contrast, here the Government voiced no concern with the plea agreement, and in fact reiterated that, due to Rice's cooperation, it stood by the sentencing recommendation despite the victim impact statement.

Finally, Rice argues that the Government allowed false testimony to be submitted during the sentencing hearing—specifically, Steve Barron's statement that he was "not consulted during the negotiations" about the agreed upon sentencing range. Assuming *arguendo* that the appeal waiver does not apply to this claim, Rice's claim fails for the reason that there is no evidence that Steve Barron's statement was false. Steve Barron explained

No. 22-50070

that he was informed of the proposed sentencing range "after the fact," which is not inconsistent with the lead prosecutor's explanation that he spoke to  Barron about the proposed resolution once the parties had reached a deal in principle. Moreover, as noted above, the district court confirmed that it imposed the sentence "regardless of any victim information [the district court] received today."

AFFIRMED.